Richard A. ASH on Behalf of himself, and on Behalf of Bethlehem Steel Corporation,

v.

Stewart S. CORT, Chairman, et al.

Civ. A. No. 72–1925.

United States District Court, E. D. Pennsylvania.

Oct. 25, 1972.

---

228

Cletus P. Lyman, Philadelphia, Pa., for plaintiff.

Edwin P. Rome, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

TROUTMAN, District Judge.

The Court, having considered the verified complaint, the answer and a stipulation of facts entered into by respective counsel and having heard oral argument, now makes the following findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

### FINDINGS OF FACT

1. Plaintiff resides in Philadelphia, Pennsylvania, is a United States citizen, and is registered and able to vote in the

United States presidential election on November 7, 1972.

2. Plaintiff is and was at all times relevant hereto the owner of fifty shares of common stock of Bethlehem Steel Corporation.

3. Bethlehem Steel Corporation (Bethlehem) is a Delaware corporation engaged primarily in the business of steel production, with a principal office in Bethlehem, Pennsylvania.

4. Bethlehem is the second largest producer of steel in the United States, and in 1971 it had net sales of approximately $2,963,602,000 and net income of approximately $139,239,000.

5. Bethlehem had on September 30, 1972 about 202,670 stockholders who owned about 44,469,541 shares of common stock, which were outstanding on that date. The market value of each share of common stock during 1972 has ranged from a high of $34⅝ to a low of $25⅞, and the closing value of a share of common stock on October 16, 1972 was $25⅞. Plaintiff, who owns fifty shares of such common stock, has owned said stock for more than one year.

6. In connection with the September 11, 1972, mailing of a quarterly dividend to its stockholders, Bethlehem included in the mailing envelope sent to each stockholder a reprint of an advertisement (the "Advertisement") entitled, "I say, let's keep the campaign honest. Mobilize 'truth squads' . . . .". (Exhibit A)

7. The advertisement appeared from on or about August 22, 1972 until September 7, 1972, in various media of national and local circulation, including "Newsweek", "Time", "U.S. News and World Report", "Business Week", "Saturday Review", "Editor and Publisher" and nineteen local newspapers in towns in which Bethlehem has plants.

8. Various magazines in which the advertisement appeared, including "Time", "Newsweek" and "U.S. News and World Report" are distributed nationally to subscribers and by sale at newsstands throughout the United States.

9. "Time", "Newsweek" and "U.S. News and World Report" are published weekly and have substantial circulation.

10. The Public Affairs Department of Bethlehem as indicated in the advertisement will send to each person on request a copy of Mr. Cort's speech entitled "Speak Out for Truth", and a copy of a folder entitled "How you can help to keep the campaign honest".

11. The placement and purchase of the advertisement and the printing and mailing of Mr. Cort's speech and the folder entitled "How you can help to keep the campaign honest" have been, and are being paid for out of the general corporate funds of Bethlehem.

12. Bethlehem may cause the advertisement to appear in the future in media of national and local circulation.

13. The mailing by Bethlehem of Mr. Cort's speech and the folder entitled "How you can help to keep the campaign honest" is continuing at present and may continue in the future. Approximately 5,500 copies of the speech and folder have been sent.

14. A Federal election is scheduled for November 7, 1972, at which voters will have an opportunity to vote for electors for the Presidency and Vice-Presidency of the United States, and for various other Federal offices, including members of Congress.

15. The advertisement, the speech and the folder do not mention by name any person currently a candidate for any local, state or Federal office, and they do not endorse or disparage the candidacy of any person currently seeking election to any local, state or Federal office.

16. The advertisement, the speech and the folder state a variety of viewpoints on issues which voters may face in the upcoming elections, without identifying any particular candidate with any particular political view.

**230**

DISCUSSION

Beginning on August 22, 1972, the "advertisement" about which plaintiff complains appeared in various news media and was distributed to shareholders of the defendant corporation, Bethlehem Steel Corporation, on September 11, 1972. On October 16, 1972, plaintiff formally filed a complaint seeking a preliminary injunction restraining such advertisement. On October 11, 1972, at about 5 P.M., plaintiff applied for a temporary restraining order. After notice, hearing was held on October 13, 1972, and said application was denied. Thereafter, the parties conferred and appeared before the Court on October 20, 1972, submitting a stipulation of facts in lieu of testimony, upon which we base the foregoing "findings of fact". Proposed amended findings and conclusions were submitted to the Court on October 24, 1972, and because of the coming Federal election on November 7, 1972, plaintiff seeks an immediate decision. Therefore, time does not permit the preparation and filing of an expanded and detailed discussion and opinion.

■ For the purpose of this application for a preliminary injunction, it is sufficient to say that a party seeking a preliminary injunction must establish by clear, positive proof the existence of four essential preconditions to the granting of injunctive relief: (1) irreparable harm to himself absent an injunction; (2) the absence of substantial harm to the defendants; (3) the absence of harm to the public interest; and (4) a likelihood that he will prevail on the merits. Winkleman v. N. Y. Stock Exchange, 445 F.2d 786, 789 (3d Cir. 1971); Nelson v. Miller, 373 F.2d 474, 477 (3d Cir. 1967). Failure to adequately establish at least a reasonable probability of success on the merits justifies denial of an injunction on this ground alone. Industrial Electronics Corp. v. Cline, 330 F.2d 480, 482 (3d Cir. 1964).

Title 18 U.S.C. § 591, as amended, defines, as follows, the term "expenditure" as otherwise used in the Act:

"(f) 'expenditure' means—

(1) a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business), *made for the purpose of influencing the nomination for election, or election, of any person to Federal office*, for the purpose of influencing the result of a primary held for the selection of delegates to a national nominating convention of a political party or for the expression of a preference for the nomination of persons for election to the office of President, or for the purpose of influencing the election of delegates to a constitutional convention for proposing amendments to the Constitution of the United States;

(2) a contract, promise, or agreement, express or implied, whether or not legally enforceable, to make any expenditure; and

(3) a transfer of funds between political committees." (Emphasis supplied)

Thus, as defined, it contemplates a specific purpose; i. e., influencing the election of a person to Federal office. Title 18 U.S.C. § 610 then continues:

"§ 610. *Contributions or expenditures by national banks, corporations, or labor organizations.*

"As used in this section, the phrase 'contribution or expenditure' shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section; but shall not include com-

munications by a corporation to its stockholders and their families or by a labor organization to its members and their families on any subject; nonpartisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and their families, or by a labor organization aimed at its members and their families; the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation or labor organization; *Provided*, That it shall be unlawful for such a fund to make a contribution or expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; or by dues, fees, or other monies required as a condition of membership in a labor organization or as a condition of employment, or by monies obtained in any commercial transaction."

It is a criminal statute imposing, for its violation, a fine and penalty.

■ Thus, at the very threshhold, the plaintiff must establish an implied cause of action under said statute. Civil actions may be implied from criminal statutes designed to protect a specific class. Common Cause v. Democratic National Committee, 333 F.Supp. 803 (D. D.C.1971). The purpose of Section 610 is to assure a popularly elected government for all the people in the United States and its main concern is to "eliminate the effect of aggregated wealth on federal elections". Pipefitters Local Union No. 562 et al. v. United States, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). True, a secondary concern of Section 610 is to protect dissenting or minority shareholders, of which plaintiff is one. Thus, since the *primary* purpose of the Act was to protect the public, rather than dissenting shareholders, a substantial showing of congressional intent is required to provide an implied cause of action. Congress

expressly vested in the Department of Justice the authority to enforce the Act. The sanctions imposed are purely penal in nature. On this record, we cannot hold, as plaintiff contends, that a private cause of action must be implied because the Department of Justice resources are inadequate to enforce the Act and thereby are inadequate to protect the public interest. Neither can we assume the partisan enforcement of the Act as plaintiff suggests. We, therefore, hold that the penal sanctions imposed are exclusive and that no private cause of action is implied. Chavez v. Freshpict Foods, Inc., 456 F.2d 890 (10th Cir. 1972). For this reason alone an injunction must be denied.

■ The second issue arises, namely, whether the advertisement constitutes a violation of Section 610, which proscribes any expenditure or contribution to a candidate, campaign committee, political party or organization in connection with any Federal election. Section 591 defines expenditure as used in Section 610 as ". . . anything of value . . . for the purpose of influencing the nomination for election, or election, of any person to Federal office." Here, the ostensible purpose—apparent on the face of the advertisement—is to mobilize and seek honest campaigns. Only incidentally does it seek to refute the statement of an unnamed candidate for political office. There is nothing in the Act which suggests a corporation or a labor union must sit idly by as accusations are being made against it or the industry or segment of the business community of which it is a part. The advertisement or article is not directed to the election of a specific person or persons or, indeed, of any persons to Federal office, as contemplated by 18 U.S.C. § 591(f). Neither is it directed to a specific candidate, campaign committee, political party or organization, as contemplated by 18 U.S.C. § 610.

■ We conclude that the purpose of the advertisement was not to influence the election of a specific candidate, but rather to seek an honest campaign and

election and, incidentally, to respond to an accusation leveled against the business community. Thus, the payment for the advertisement did not constitute an "expenditure" within the meaning of Section 591(f) and Section 610.

A third issue arises in that defendants challenge the constitutionality of the Act. We need not reach the constitutional issue. Under the facts and circumstances of this case, we have construed the term "expenditure" to exclude a situation where, as here, a corporation (or a labor union) expends its general funds to communicate to the public (a) its views as to honest campaigns and elections, an issue vital to its corporate interest and to the public; (b) its views as to a statement made by an unnamed candidate for election aimed at the community of which it is a part; and (c) without advocating the election of any particular person or party.

In thus construing the term "expenditure", we need not decide whether the statute is overbroad in that it unduly infringes upon the First Amendment rights of either corporations or labor unions.

Accordingly, on the basis of the record before us, we make and enter the following

## CONCLUSIONS OF LAW

1. The Court has subject-matter jurisdiction over Count I of the complaint, pursuant to 28 U.S.C. § 1331.

2. The Court has personal jurisdiction over defendant, Bethlehem Steel Corporation.

3. Plaintiff has failed to prove that there is a likelihood of success on the merits, in that:

(a) plaintiff has no private right of action under 18 U.S.C. § 610;

(b) the expenditures made by Bethlehem Steel Corporation in connection with the advertisement, the speech and the folder are not "contributions or expenditures" within the meaning of 18 U.S.C. § 610;

(c) the expenditures made by Bethlehem Steel in connection with the advertisement, the speech and the folder are not "expenditures" made for "the purpose of influencing the nomination for election, or the election of any person to Federal office" and, hence, are not "expenditures" within the meaning of 18 U.S.C. § 591(f)(1).

(d) the expenditures made by Bethlehem Steel Corporation in connection with the advertisement, the speech, and the folder did not constitute "active electioneering directed at the general public on behalf of a candidate in a Federal election" as defined in the legislative history to the recent amendment of 18 U.S.C. § 610; Congressional Record, November 30, 1971, H 11477, 11478;

(e) to enjoin the expenditures made by Bethlehem Steel Corporation in connection with the advertisement, the speech, and the folder would prevent a corporation from seeking an honest campaign and election and refuting a statement made by an unidentified candidate, which is adverse to its interest, thereby giving rise to grave First Amendment issues;

(f) under the facts and circumstances of this case, 18 U.S.C. § 610 must be narrowly construed to avoid an overbroad application infringing on a corporation's (and labor union's) First Amendment right to seek an honest campaign and to refute statements on issues of crucial concern to it and to the public, thus preventing a public debate on such issues.

4. Plaintiff has failed to prove that injunctive relief would not cause substantial harm to defendants.

5. Plaintiff has failed to prove that injunctive relief would not be harmful to the public interest.

6. In failing to prove a likelihood of success on the merits, plaintiff has failed to prove that irreparable harm would result if an injunction is not granted.

A preliminary injunction will be denied.

EXHIBIT A

# "I say let's keep the campaign honest. Mobilize 'truth squads'..."

Stewart S. Cort, *Chairman*
Bethlehem Steel Corporation

"Why do I see this need? Because several months ago we lived through a number of political primary campaigns. And it ought to be clear to all of us that there have been times when truthfulness took an awful beating. And now we have a presidential campaign ahead, during which we can clearly see a lot more of the same.

"I'm thinking of the careless rhetoric and accusations that are being thrown around these days—their main target being the business community.

"Right now, look at every candidate's declared political programs. Analyze every issue. If you think any of them are faulty, ill-founded, or misleading, prepare your own answers and use those answers to set the record straight. I'd suggest that groups with a deep interest in good government organize programs to encourage responsible, honest, and truthful campaigning. Mobilize "truth squads," perhaps.

"One thing you can do is talk in advance with the communications media in your area—newspaper publishers, editors, reporters, radio and television people, and magazine publishers. Alert them to the kinds of false statements that are likely to be made and show them how and why those statements are false or deceptive. Give them the facts. They're likely to take a highly responsible position in reporting what the politicians say if they're forewarned.

"And when outrageous accusations are reported in the media, you ought to refute them immediately. You can do it if you're properly prepared. Plan to attend political functions and stand up when spokesmen are off base. Concerned citizens ought to do this; it's nothing more than true democracy in action."

[A6790]

*From a talk "SPEAK OUT FOR TRUTH" to the Rotary Club, Jacksonville, Florida.*

*As an example of the careless rhetoric and accusations about the business community, Mr. Cort quoted the following statement made by a political candidate: "The time has come for a tax system that says to big business—you must pay your fair share."*

*His answer: "That's a reasonable demand, but it implies that we aren't already paying our 'fair share.' My own company has been tagged with that sort of accusation despite the fact that over the past 10 years our taxes have averaged $37 million a year more than our net income. Our total tax expense was nearly $200 million last year, $155 million in 1970, and more than $1.7 billion for the 10 years from 1962 through 1971.*

*"So please think twice before swallowing all this baloney about large corporations not carrying their fair share of the tax burden."*

If you would like a copy of Mr. Cort's entire speech "SPEAK OUT FOR TRUTH," and if you would like a folder telling how to go about activating *Truth Squads,* write: Public Affairs Dept., Bethlehem Steel Corporation, Bethlehem, PA 18016.