Richard A. ASH, on behalf of himself and on behalf of Bethlehem Steel Corporation, Plaintiff,

v.

Crowdus BAKER et al., Defendants,

and

Bethlehem Steel Corporation, Nominal Defendant.

Civ. A. No. 75-903.

United States District Court,
E. D. Pennsylvania,
Civil Division.

April 21, 1975.

As Amended April 22, 1975.

Cletus P. Lyman, Philadelphia, Pa., for plaintiff.

Edwin P. Rome, Jerome R. Richter, and William H. Roberts, Philadelphia, Pa., Curtis H. Barnette, Francis Van Nuys, Bethlehem, Pa., for defendants.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Plaintiff, Richard A. Ash, in a derivative action filed March 27, 1975, seeks to enjoin the holding of the annual meeting of Bethlehem Steel Corporation (Bethlehem) scheduled for April 29, 1975. The individual defendants are the directors of Bethlehem.. Bethlehem, itself, is designated as a nominal defendant.

The basis of plaintiff's contention is that the proxy solicitation material distributed to Bethlehem's shareholders was materially misleading and in violation of the Securities Exchange Act of 1934 [1] and Regulation 14A and Rule 14a–9 thereunder. Specifically, plaintiff claims that the proxy solicitation material fails to disclose the existence, sub-

1. 15 U.S.C. § 78a et seq.

stance and present status of certain prior litigation brought by Ash, the same plaintiff in this case, against Bethlehem and its officers and directors.

The prior litigation resulted in a denial of a preliminary injunction,[2] affirmation of said denial on appeal,[3] grant of a motion for summary judgment in favor of Bethlehem and its officers and directors, reversal of summary judgment on appeal,[4] and grant of certiorari by the Supreme Court.[5] Argument was held before the Supreme Court on March 18, 1975. The matter is now *sub judice* in the Supreme Court. In the prior litigation, Ash contends that the officers and directors of Bethlehem used corporate funds for political advertising [6] in the 1972 Presidential Campaign and otherwise expended corporate funds in violation of the Federal Corrupt Practices Act, 18 U.S.C. § 610. In the prior litigation, Ash, in addition to other relief, seeks damages of $500,000 on behalf of Bethlehem against the individual defendants.

In the case at bar, Ash contends that the existence, substance and present status of this prior litigation should have been disclosed to the shareholders in the proxy solicitation material. Plaintiff, in addition to his claim that an injunction should issue to restrain the holding of Bethlehem's annual meeting, contends that all proxies obtained for said meeting be nullified and an award of money damages be entered against the individual defendants for costs incurred in rescheduling the annual meeting plus an award of counsel fees and costs to his attorney.

A motion for a preliminary injunction was filed on March 31, 1975, by the plaintiff. Thereafter, a pre-trial conference was held on April 4, 1975, and a full hearing was held on April 17, 1975. At the hearing, counsel for the corporation defendant and the individual defendants contended that this Court lacked in personam jurisdiction over those individual defendants who were not personally served. However, it was stipulated between counsel that the hearing on the injunction would proceed as a trial on the merits in accordance with F.R.Civ.P. 65(a)(2). If the injunction is denied, it is to be deemed a final order. If it is granted, the question of damages is to be heard subsequently and after personal service is made on all of the individual defendants.

The Court, after considering the verified complaint, a written stipulation of facts and certain documentary evidence produced at the hearing, and having heard oral argument, makes the following findings of fact:

## FINDINGS OF FACT

1. Plaintiff is an individual residing in Philadelphia, Pennsylvania.

2. Bethlehem Steel Corporation (Bethlehem) is a Delaware corporation with a principal office located at Bethlehem, Pennsylvania.

3. Bethlehem is the second largest steel producer in the United States, with 1974 net sales of about $5,381,000,000. It maintains a number of plants and offices for the conduct of its business at various locations throughout the United States.

4. Defendants, Crowdus Baker, Bernard D. Broeker, Stewart S. Cort, Lewis W. Foy, Charles W. Ganzel, Thomas S. Gates, George P. Jenkins, Charles B. McCoy, Albert M. Reed, C. William Ritterhoff, Richard M. Smith, C. Thompson Stott, Frederic W. West, Jr., and Joseph S. Wright are individuals residing in the United States who comprise the Board of Directors of Bethlehem. Foy is Chairman, West is President, Smith and Ritterhoff are Executive Vice Presidents, Stott and Ganzel are Senior Vice

---

2. 350 F.Supp. 227 (E.D.Pa.1972)

3. 471 F.2d 811 (3rd Cir. 1973)

4. 496 F.2d 416 (3rd Cir. 1974)

5. 419 U.S. 992, 95 S.Ct. 302, 42 L.Ed.2d 264 (1974).

6. A reproduction of the advertisement can be found at 350 F.Supp. 233.

Presidents, and Reed is Vice President and Comptroller.

5. Bethlehem Common Stock is listed and traded on the New York Stock Exchange. On January 31, 1974, 43,665,-676 shares of Bethlehem Common Stock were outstanding and in the hands of the public. On December 31, 1974, there were about 188,000 stockholders of record of Bethlehem Common Stock.

6. The only stock entitled to be voted at the Annual Meeting of Bethlehem are shares of Bethlehem Common Stock.

7. The Annual Meeting of Bethlehem (the "Annual Meeting") will be held on April 29, 1975, at 11:00 a. m. in the Hotel duPont, Eleventh and Market Streets, Wilmington, Delaware, for certain purposes including the election of Directors.

8. Plaintiff has made no demand on the directors of Bethlehem to seek redress for Bethlehem directly for the matter out of which plaintiff's suit is alleged to arise.

9. Plaintiff has made no request for concerted action to plaintiff's fellow stockholders.

10. In connection with the Annual Meeting, there was prepared and distributed by United States mail to the stockholders of Bethlehem a Notice of Annual Meeting of Stockholders and Proxy Statement, along with two forms of Proxy. Copies of these proxy solicitation documents have been received into evidence.

11. The Proxy Statement solicited the recipient stockholder, *inter alia*, to vote for the election of the individual defendants as directors through the signing and returning of the Form of Proxy.

12. The expenses incurred by Bethlehem to date, related to the defense of the case of Richard A. Ash v. Steward S. Cort et al., 350 F.Supp. 227 (E.D.Pa. 1972) ("Ash v. Cort"), exceed $75,000.

13. From September 27, 1972, to date:

(a) The proxy material and annual reports published by Bethlehem have not mentioned Ash v. Cort.

(b) Filings by Bethlehem with the Securities & Exchange Commission have not referred to Ash v. Cort.

(c) No written communications between Bethlehem and the Securities & Exchange Commission have referred to Ash v. Cort.

(d) No resolutions of the board of directors or minutes of the board of directors have referred to Ash v. Cort.

(e) No resolutions of the board of directors have referred to the decision to raise the question of whether Title 18 U.S.C. § 610 is unconstitutional.

14. The estimated costs of reprinting the proxy material and resoliciting Bethlehem stockholders are $92,500, comprised of the following estimated expenses:

| | | |
|---|---|---|
| (1) | Reprinting proxy statement | $12,000 |
| (2) | Reprinting proxy card | 3,000 |
| (3) | Envelopes, outgoing and return | 3,000 |
| (4) | Computer printing of proxy cards—overtime basis | 3,000 |
| (5) | Part time help for inserting material in outgoing mail envelopes | 2,500 |
| (6) | Outgoing postage | 20,000 |
| (7) | Return postage | 16,000 |
| (8) | Delivery of proxy material to brokers | 3,000 |
| (9) | Broker solicitation fees and postage | 30,000 |
| | | $92,500 |

14A. Resolicitation of Bethlehem stockholders and the postponement of the Annual Meeting to a subsequent date would result in incurring other additional costs and expenses, the full nature and amount of which cannot be presently accurately estimated.

15. Plaintiff's attorney, Cletus P. Lyman, Esquire, wrote letters dated March 27, 1973, and April 4, 1973, on behalf of plaintiff to Bethlehem. Francis Van Nuys, Esquire, Vice President Law and General Counsel, wrote letters dated April 3, 1973, and April 10, 1973, to Cletus P. Lyman, Esquire, in response thereto. All four letters have been admitted into evidence.

16. Except as stated in paragraph 15 hereof, plaintiff has sent no other communication to Bethlehem or its directors in 1972, 1973, 1974 or 1975.

17. Plaintiff personally attended Bethlehem's Annual Meeting in 1974 and

did not raise any question concerning Ash v. Cort or the proxy material.

18. Plaintiff, Ash, as of February 28, 1975, owns 50 shares of Bethlehem's stock and is entitled to vote at the April 29, 1975, Annual Meeting of the Shareholders of Bethlehem.

## DISCUSSION

The first question to resolve is whether the omission of the substance and present status of the prior litigation from the proxy solicitation material is in violation of Rule 14a–9. This rule provides as follows:

"240.14a–9. *False or misleading statements.*

"(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

"(b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." (17 C.F.R. § 240.14a–9)

The plaintiff does not allege that a false statement was made nor that there is an omission to correct a statement in an earlier proxy solicitation that has become false and misleading. The plaintiff claims that the Rule is violated because the proxy solicitation documents fail to state material facts necessary to make the statements contained therein not false or misleading.

A review of the precedent on the test to determine the materiality of facts omitted from proxy statements reveals two possible approaches. The stricter approach requires inclusion of facts which would have "a significant propensity to affect the voting process." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1960). Chief Judge Friendly has approved the stricter approach in Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281 (2nd Cir. 1973). The less strict approach is also derived from language in Mills v. Electric Auto-Lite Co., *supra*, and has been formulated by Judge Swygert in Northway Inc. v. TSC Industries, Inc., 512 F.2d 324 (7th Cir. 1975).

"We believe the policies which underlie § 14(a) and Rule 14a–9 are best served by a test that includes all facts which a reasonable stockholder might consider important. We are mindful of Judge Friendly's thorough consideration of this question and of the criticism that such a test is 'too suggestive of a mere possibility, however unlikely." Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1302 (2nd Cir. 1973). Yet we think any test which does not require the inclusion of facts which *could* influence a reasonable stockholder would seriously undercut the intended prophylactic effect of these disclosure provisions. Any speculation under such a test is limited by the 'reasonable stockholder' language therein and by the overriding purposes of § 14(a), from which any test must take its meaning and to which Justice Harlan specifically referred in *Mills*. This test will not reach 'trivial' and 'unrelated' facts; neither will it fail to reach facts which may be relevant for some, but

not for others." (Emphasis in original)

■ Under either test I am of the opinion that the omission from the proxy solicitation documents of the substance and present status of the prior litigation is not material. In the first place, there is now pending before the Supreme Court certain complex and difficult legal issues. The materiality of this prior litigation to the proxy statement depends, at least to a certain extent, on the outcome of the Supreme Court case. In the second place, those cases which have found an omission of a material fact to exist in a proxy statement involve omissions of facts which are definitely significant to the shareholders and not the omission of matters which might not be significant. For example, proxy solicitation documents must include financial information relevant to a merger [7] or acquisition,[8] insider trading [9] or major refinancing.[10] Such omissions are obviously material matters which should be disclosed to shareholders. It may well be that after the Supreme Court issues its opinion in the pending litigation, the substance of that litigation will become material in regard to future proxy solicitations by Bethlehem. I find that in light of the above findings of facts and the pending litigation in the Supreme Court, the omission in the proxy solicitation documents for the 1975 annual shareholders meeting of Bethlehem is immaterial under either the "significant propensity" test or the test of whether the omission might have influenced a reasonable shareholder. It should be stated however, that this finding is limited to the precise facts of the within case.

■ Since I have found that the omissions are not material, I do not need to resolve the question of whether the extraordinary equitable remedy of injunctive relief should be imposed. However, I note that the plaintiff in 1973 requested Bethlehem's management to refer to the prior litigation in its proxy statements. Thereafter, summary judgment was entered for the defendants on July 11, 1973, which was not reversed until April 16, 1974. Following that reversal, plaintiff never again requested the inclusion of information pertaining to the prior litigation, although he attended the stockholders meeting in late April, 1974, until he brought suit in the within action on March 27, 1975. Equitable relief is not extended to a plaintiff who is guilty of bad faith.

"As a matter of public policy, equitable relief typically will not be granted to an individual who has acted in bad faith with respect to the transaction that has been brought before the court." Wright & Miller, Federal Practice and Procedure, Civil § 2946.

Plaintiff is guilty of laches and bad faith in bringing this matter to the attention of the Court after the proxy solicitation materials have been sent to the shareholders. The substantial expense to Bethlehem of approximately $92,500 to resolicit proxies would be too great in relation to any possible benefit to the shareholders in disclosing the substance of the prior litigation.

## CONCLUSIONS OF LAW

1. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

2. The Court has in personam jurisdiction over Bethlehem Steel Corporation. Counsel for the individual defendants has consented to in personam jurisdiction over said defendants for the purpose of determining whether a permanent injunction shall issue.

3. Plaintiff has failed to establish that the 1975 proxy solicitation docu-

7. Beatty v. Bright, 318 F.Supp. 169 (S.D. Iowa 1970)

8. Northway, Inc. v. TSC Industries, Inc., 512 F.2d 324 (7th Cir. 1975).

9. Rafal v. Geneen [1972–1973 Transfer Binder CCH Fed Sec L. Rep ¶ 93505 (E.D.Pa. 1972)]

10. Robinson v. Penn Central Company, 336 F.Supp. 655 (E.D.Pa.1971)

ments of Bethlehem Steel Corporation omit material facts in violation of the Securities Exchange Act of 1934, 15 U. S.C. 78n(a), and the regulations and rules promulgated thereunder.

4. Injunctive relief will be denied.