Richard A. ASH, on Behalf of Himself, and on Behalf of Bethlehem Steel Corporation, Appellant,

v.

Stewart S. CORT et al., Appellees,

and

Bethlehem Steel Corporation, Nominal Defendant.

No. 73-1739.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1974.

Decided April 16, 1974.

Cletus P. Lyman, Lyman & Ash, Philadelphia, Pa., for appellant.

Edwin P. Rome, Jerome R. Richter, William H. Roberts, Philadelphia, Pa., for appellees; Blank, Rome, Klaus & Comisky, Philadelphia, Pa., of counsel.

Before SEITZ, Chief Judge, and HASTIE and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Plaintiff, a stockholder in Bethlehem Steel Corporation and registered to vote in federal elections, appeals from an order of the District Court for the Eastern District of Pennsylvania denying his request for an evidentiary hearing and granting defendants' motion for summary judgment. Defendants are directors of Bethlehem. The gravamen of plaintiff's complaint is that defendants caused Bethlehem to expend money to help secure the election of the Republican party's 1972 presidential candidate. Plaintiff asserts that the corporate expenditures, for an advertisement and a pamphlet, violated a federal prohibition on corporate campaign spending, 18 U.S.C. § 610 (1970), as amended (Supp. II 1972). Plaintiff, seeking an injunction and damages, invokes federal jurisdiction over this claim under 28 U.S.C. § 1331 (1970), making the requisite jurisdictional allegations.

The district court's order granting summary judgment merely recited that no material factual dispute existed and that defendants were not liable to plaintiff for the claimed violation of federal law. We presume that this assertion was bottomed on the findings and conclusions relied upon by the district court to support its earlier denial of a preliminary injunction. See 350 F.Supp. 227 (E.D.Pa.1972). Defendants argue on appeal the propriety of those findings and conclusions and urge that the sum-

mary judgment be affirmed on that basis. The major points of the district court's decision are that plaintiff would have no cause of action from defendants' violation of 18 U.S.C. § 610 (1970), as amended (Supp. II 1972), and that, in any event, defendants did not violate § 610.

## I.

Before addressing the points urged by defendants to justify and plaintiff to attack summary judgment, we must consider two matters of justiciability.

*Mootness*

In affirming the district court's earlier denial of a preliminary injunction, we limited our decision narrowly, holding only that the court's finding of no irreparable harm to plaintiff from denying the injunction was not clearly erroneous. 471 F.2d 811 (3d Cir. 1973). At that time, however, we noted that the question of mootness would have to be examined at a later point in these proceedings. *Id.* at 812. As originally drawn, plaintiff's complaint focused on the 1972 presidential election and sought to prevent corporate expenditures from influencing that election. That election is now history. Nonetheless, plaintiff alleges that defendants intend to make similar expenditures in future elections, and defendants, far from denying this, hotly defend their right to do so.

■ Controversies concerning elections often have presented mootness problems. See, e. g., Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). These problems arise since election con-

troversies almost always are spawned shortly before the election, seek prospective relief directed to the election, and reach appellate courts only after the election. Where the basis of such a controversy remains after an election and where the dispute is likely to recur, the case will not be found moot, even where prospective relief alone is sought. Moore v. Ogilvie, *supra*, 394 U.S. at 816, 89 S.Ct. 1493. When this case was before us on appeal of the preliminary injunction denial, the complaint asserted pendent federal jurisdiction over a claim arising under state law; although the complaint was ambiguous, it apparently sought injunctive relief for defendants' alleged violation of federal law and, on behalf of the corporation, damages for the claimed state law violation. Our concern with mootness arose in this context.

■ Were plaintiff's federal claim pressed solely to secure injunctive relief, we would be required to determine whether plaintiff's bare allegation of defendants' intention to make future similar expenditures would support review, given no showing of a consistent pattern of such conduct and no assurance of plaintiff's continued ownership of Bethlehem stock. After proceedings resumed in the district court, however, the plaintiff amended his complaint and now clearly demands, in addition to injunctive relief, damages on behalf of the corporation for violation of § 610.[1] Even if plaintiff has no live claim for injunctive relief, the dispute over damages renders this controversy justiciable. See Powell v. McCormack, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). We need not decide whether

---

1. Plaintiff in his amended complaint has dropped the allegations contained in the state law count of his original complaint. One allegation from the federal count of the original complaint and carried over verbatim in the amended version, however, declares, without elaboration that defendants violated both state and federal law. Defendants, presuming that plaintiff thus had not abandoned his state claim, moved for summary judgment on the federal claim and dismissal

of plaintiff's pendent state claim for want of jurisdiction following judgment for defendants on the only federal matter. The district court does not mention plaintiff's state claim, but merely grants defendants' motion. We assume that if plaintiff did not abandon his state law claim, the district court's order dismissed that claim for want of federal jurisdiction but do not reach the dismissal's propriety.

plaintiff's claim would be moot if he did not seek damages as well as an injunction.[2]

*Standings*

■ Question also is raised concerning plaintiff's standing to prosecute this action. As a constitutional matter, all that is required for standing is that the plaintiff have been personally injured or be threatened with such injury and that the injury be directly related to plaintiff's legal claim. Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L. Ed.2d 947 (1968); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Plaintiff alleges economic injury, as a stockholder whose interest in Bethlehem is worth less than it would be had defendants not caused the challenged expenditures to be made, and further injury as a citizen and voter whose ability to secure a responsive federal government has been lessened. While these injuries, tangible and intangible, may be small, they are personal to plaintiff, directly related to his claim, and may be remedied by the injunctive and damage relief sought; hence they are sufficient to support plaintiff's standing. See United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 685–689, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), and cases cited *id.* at 689, n. 15, 93 S.Ct. 2405.

■ Plaintiff's standing is not defeated by the fact that his injuries are shared by countless others. Although the Supreme Court's language in Frothingham v. Mellon, 262 U.S. 447, 487, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), indicated that an injury to many might confer standing to none, *Flast* intimates that *Frothingham* stated policy, not constitutional dogma, Flast v. Cohen, *supra*, 392 U.S. at 93–94, 88 S.Ct. 1942, and *SCRAP* declared that standing is not

lost because the harm asserted is universally shared, United States v. SCRAP, *supra*, 412 U.S. at 686–688, 93 S.Ct. 2405. Finally, because we are asked not to review administrative action but to adjudicate private rights, we need not determine whether the statute asserted to provide plaintiff's cause of action places him outside the class permitted to invoke our processes. Cf. Davis v. Romney, 490 F.2d 1360, 1363–1364 (3d Cir. 1974); compare Flast v. Cohen, *supra*, 392 U.S. at 101–106, 88 S.Ct. 1942, and Baker v. Carr, *supra*, 369 U.S. at 204–208, 82 S.Ct. 691, with Sierra Club v. Morton, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153–154, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Alleging personal injury from defendants' violation of a federal statute, plaintiff may invoke our jurisdiction under 28 U.S.C. § 1331 (1970); questions of statutory construction will be met in determining whether plaintiff has stated a cause of action and in ruling on the merits of his claim.

## II.

The district court's decision that defendants were entitled to judgment as a matter of law rested on several legal conclusions, among them that plaintiff failed to state a cause of action. Plaintiff relies upon 18 U.S.C. § 610 (1970), as amended (Supp. II. 1972), as providing his cause of action. Section 610, *inter alia*, makes it "unlawful for . . . any corporation . . . to make a contribution or expenditure in connection with any [federal] election . . . .," and provides criminal penalties for its violation. Plaintiff contends that, although it expressly provides only penal sanctions, § 610 "implies" a cause of action in his favor.

---

2. Since the controversy between plaintiff and defendants is not moot, the viability of plaintiff's claim for injunctive relief must be determined, if plaintiff prevails on the merits, according to settled principles controlling the district court's discretion to grant or withhold injunctive relief. *See* J. Moore, 7 Moore's Federal Practice ¶ 65.18[3] (2d ed. 1969).

*Standards for Implied Cause*

■ To find a cause of action "implied" in a statute, we must determine (1) that the provision violated was designed to protect a class of persons including the plaintiff from the harm of which plaintiff complains and (2) that it is appropriate, in light of the statute's purposes, to afford plaintiff the remedy sought. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 395–397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Wyandotte Co. v. United States, 389 U.S. 191, 200–202, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); J. I. Case Co. v. Borak, 377 U.S. 426, 431–435, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Finding an implied cause pursuant to these criteria is not entirely an exercise in divining legislative intent. Certainly, legislative intent is relevant; where the legislature clearly has indicated its intent to grant or withhold a cause of action, implicitly or explicitly, courts will give effect to that intent. E. g., National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 458–461, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). Absent some reasonably clear indication of legislative attention to the possible creation of a cause of action, however, courts ascertain the policies underlying the substantive law and determine the propriety, as a means of effectuating those policies, of affording litigants a particular remedy. Bivens v. Six Unknown Named Agents, *supra*, 403 U.S. at 395–397, 91 S.Ct. 1999 (opinion of the Court), and 402–403, n. 4, 91 S.Ct. 1999

(Harlan, J., concurring); Holloway v. Bristol-Meyers Corp., 485 F.2d 986, 989–999 (D.C.Cir. 1973).

We are urged to find that this process of judicial policy consideration to determine whether an "implied" cause of action can be asserted was rejected by the Supreme Court in National Railroad Passenger Corp. v. National Association of Railroad Passengers, *supra* (hereinafter *"Amtrak"*). Relying on the maxim *expressio unis est exclusio alterius* [expression of one thing is exclusion of others], the Court declared in *Amtrak* that " . . . when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." 414 U.S. at 458, 94 S.Ct. at 693. This rule of statutory construction does not alter the process used to determine if a cause should be inferred in the absence of statutory language indicating legislative intent; rather, it aids the court merely in determining when legislative intent to preclude a remedy can be fairly implied.[3]

■ For the *Amtrak* rule to apply, the statute must expressly provide the plaintiff a remedy that may logically be said to be exclusive. In *Amtrak*, the remedy expressly provided to correct the harm of which plaintiffs complained was a civil action prosecuted by the Attorney General. 45 U.S.C. § 547 (1970). In the instant case no express civil action is provided to remedy plaintiff's, or any other, alleged injury.[4] Only a criminal

---

3. The extent to which the Supreme Court relied on the rule of statutory construction in *Amtrak* is unclear. After announcing the rule, the Court went on to find evidence of a clear legislative intent to withhold the remedy sought, National R.R. Pass. Corp. v. National Ass'n of R.R. Pass., 414 U.S. 453, 458–461, 94 S.Ct. 690, 693–695, 38 L.Ed.2d 646 (1974); the Court also examined the policies, as it conceived them, behind the "Amtrak Act", Railroad Passenger Service Act of 1970, 45 U.S.C. § 501 et seq. (1970), and found that implication of a private remedy there would be inconsistent with those policies, *id.* at 461–464, 94 S.Ct. 690.

4. Judge Aldisert notes that, in contrast to Title II of the Federal Election Campaign Act of 1971, amending *inter alia* § 610, Title III expressly provides a civil cause of action to the Attorney General. This provision referred to by Judge Aldisert allows the Attorney General to institute a civil action for violation of certain reporting and disclosure requirements imposed on candidates and campaign committees. These requirements were first imposed by the 1971 Act and criminal penalties for their violation were first provided in the 1971 Act.

Provision of this civil remedy may well bar inference of a private remedy for violation

sanction is expressly provided for violation of § 610. Courts have consistently held that statutes providing for criminal liability do not preclude assertion of private causes of action. E. g., Wyandotte Co. v. United States, *supra*, 389 U.S. at 200–202, 88 S.Ct. 379; Texas & Pacific Railway Co. v. Rigsby, 241 U.S. 33, 39–41, 36 S.Ct. 482, 60 L.Ed. 874 (1916). In *Rigsby* the Supreme Court, inferring a private cause of action for violation of a criminal provision, distinguished "remedial" from "penal" application of a statute. *Id.* at 41, 36 S.Ct. 482. Thus, since § 610 cannot be said to provide any remedy for the alleged harm to plaintiff here, *Amtrak* would not preclude finding an implied cause.

*Statutory Design*

Our inquiry, then, must be, first, whether § 610 was designed to protect plaintiff from the harm he alleges. Section 610 is the end-product of a series of enactments limiting campaign giving and spending. See United States v. UAW, 352 U.S. 567, 570–584, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957). In discussing the seminal federal limitation on corporate campaign contributions, carried forward into the present § 610, the Supreme Court stated that it was "motivated by two considerations. First, the necessity for destroying the influence over elections which corporations exercised through financial contribution. Second, the feeling that corporate officials had no moral right to use corporate funds for contribution to political parties without the consent of the stockholders." United States v. CIO, 335 U.

S. 106, 113, 68 S.Ct. 1349, 1353, 92 L.Ed. 1849 (1948) [footnotes omitted].

■ As a voter and citizen, plaintiff is within the class Congress sought to protect by prohibiting corporate expenditures in campaigns for federal office; Congress, in the various enactments embodied in § 610, declared its view that such expenditures reduced the ability of voters to secure a government responsive to their wishes and increased the likelihood of governmental actions favorable to particular economic blocs but inimical to the general welfare. *Id.*; 117 Cong.Rec. 43379–81 (1971) (remarks of Congressman Hansen).

■ As a stockholder, plaintiff is within the class secondarily protected by § 610, which keeps control over political contributions in his hands and not in those of corporate managers or directors. *Id.*; 117 Cong.Rec. 43384–85 (remarks of Congressman Thompson). The harm to plaintiff as a voter and citizen, while not set forth explicitly in his complaint, is presumably the intangible harm foreseen by Congress. The alleged harm to plaintiff and other Bethlehem stockholders is the loss of over one-half million dollars from the corporation's treasury for the challenged expenditures.[5] Clearly plaintiff satisfies the first requirement for determining a cause of action to be implied in § 610.

■ Defendants contend, however, that Congressional intent to protect voters, citizens and stockholders does not satisfy the implied cause test. First, defendants argue that § 610 primarily protects not voters and citizens but the public in general and that a cause of ac-

---

of these reporting and disclosure requirements. We do not, however, believe that any intent to bar the remedies sought here can be inferred from the 1971 Act's grant of a civil, as well as a criminal, action for violation of conduct first proscribed in 1971 and its failure to grant any civil remedies for conduct prohibited since 1907. Amtrak certainly does not require that such an inference be drawn from the 1971 Act's amendment of long-standing criminal provisions coincidentally joined, albeit in separate

titles, with promulgation of new civil and criminal actions.

5. In focusing on the harm to plaintiff and the propriety of according him a remedy, we are aware that damages are sought not for plaintiff as an individual stockholder but, in the form of a derivative action, for all injured stockholders. Where stockholders suffer injury jointly from violation of federal rights, a derivative action may be an implied remedy. *See* Drachman v. Harvey, 453 F.2d 722, 736–738 (2d Cir. 1972) (in banc).

tion will only be implied to protect members of a specific, limited class. We reject defendants' argument that provisions designed for the protection of the entire American public cannot give rise to implied causes. See Bivens v. Six Unknown Named Agents, *supra* (finding a private cause of action implied in the Fourth Amendment's protection of "[t]he right of the people to be secure . . . against unreasonable searches and seizures . . . ."). The breadth of the protected class is, however, relevant to the propriety of allowing criminal sanctions, rather than private actions, to enforce a statutory prohibition and will be considered below.

Second, defendants argue that no cause of action may be implied to protect plaintiff *qua* stockholder because such protection was only a secondary purpose of § 610. Although it may be improper to infer a cause of action from a statute only incidentally protecting plaintiff, the Supreme Court has indicated that protection of stockholders was not merely an incidental purpose of § 610, United States v. CIO, *supra*, 335 U.S. at 113, 68 S.Ct. 1349, and protection of plaintiff need not be the act's primary purpose. See J. I. Case Co. v. Borak, *supra*, at 431–432, 84 S.Ct. 1555; cf. Wyandotte Co. v. United States, *supra*.

### Propriety of Private Action

In determining the propriety of affording plaintiff a cause of action for violation of § 610, we must ascertain whether such a remedy will effectuate the act and whether any "collateral" considerations counsel withholding this remedy. Since the purpose of the section is to prevent certain expenditures, allowing suit to enjoin or recover such expenditures would seem to be consistent with accomplishment of § 610's goal. Although the breadth of § 610's coverage favors enforcement solely by criminal sanction to avoid a multiplicity of possible suits challenging intangible public harm,[6] the intent to protect many people from many possible violations also favors individual suits to enforce the act as the number of putative defendants, committing acts more likely to be covert than notorious, is so great that government enforcement alone might prove insufficient, cf. Byram Concretanks, Inc. v. Warren Concrete Products Co., 374 F.2d 649, 651 (3d Cir. 1967). We note that stockholders, able to protect their investments by recovering damages on behalf of the corporation, may be expected to be particularly vigilant in detecting violation of § 610.

The nature of the prohibited conduct further supports provision of private remedies. Contributions or expenditures to influence federal elections are prohibited; yet the politician whose election is facilitated by violation of § 610 may be in charge of the statute's enforcement. This possible conflict of interest is not simply hypothetical; plaintiff alleges that in the instant case nonenforcement of § 610 by the Justice Department was due to the Department's control by the candidate defendants supported.[7]

The relative expeditiousness possible in civil, contrasted with criminal, proceedings also supports implication of a cause here. The section's primary focus

---

**6.** This objection pertains to suits by nonstockholder citizens. Here, of course, plaintiff sues not only as a citizen and voter but also as a stockholder of the allegedly offending corporation, a narrower class suffering tangible harm. We recognize also that the number of putative § 610 plaintiffs would be much smaller where, for instance, a Congressional rather than Presidential election is involved.

**7.** Among reasons cited by the district judge for concluding that plaintiff lacked a cause

of action was his unwillingness to "assume the partisan enforcement of the Act as plaintiff suggests." 350 F.Supp. at 231. We make no such assumption here. While plaintiff has alleged, and presumably stands ready to prove, partisan enforcement of § 610, our finding of a cause of action is supported simply by the possibility of such enforcement, or non-enforcement—presence or absence of actual partisan enforcement in this case is irrelevant to our determination.

is on preventing the corruption of elections by corporate contributions. Violations of § 610 are, we presume, most likely to occur in the period immediately preceding an election, and, given the delays incident to criminal investigation and grand jury indictment as well as trial, the election may well be over before the section's violation is determined. Private enforcement, particularly by injunction, can be relatively swift.

We note no countervailing reason for denying private remedies here. The matter before us involves none of the "special circumstances" discussed in *Borak* as counseling denial of a private cause of action. See J. I. Case Co. v. Borak, *supra* at 396–397, 84 S.Ct. 1555, 12 L.Ed.2d 423. Nor does § 610 involve the operation of a regulatory agency whose policy determinations on this or other matters might be threatened by allowing private enforcement. See Holloway v. Bristol-Meyers Corp., *supra*, 485 F.2d at 990–992, 997–1002. Thus, we find allowance of a private cause of action, whether brought by a citizen to secure injunctive relief or by a stockholder to secure injunctive or derivative damage relief, proper to remedy violation of § 610.[8]

### III.

The district court concluded, defendants contend rightly, that even if plaintiff were found to have a cause of action under § 610, defendants would be entitled to judgment as a matter of law. 350 F.Supp. at 231–232. The court decided that the meaning of "contribution or expenditure" in § 610 was governed by the definition of those terms in 18 U.S.C. § 591 (1970), as amended (Supp. II 1972); that § 591 requires a purpose to influence the nomination or election of a particular person; and that defendants' advertisements and pamphlets were designed not to influence election of any person but to advocate an honest campaign and "respond to an accusation leveled against the business community." *Id.* Plaintiff contests and defendants support each of these conclusions.

### Scope of § 610

Plaintiff disagrees with judging Bethlehem's expenditures by the § 591 definition of that term, claiming that § 610 contains a more specific definition of the term, which should control here. Section 591, in relevant part, reads:

When used in sections 597, 599, 600, 602, 608, 610 and 611 of this title—

\* \* \* \* \* \*

(f) "expenditure" means—

(1) a purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value . . . made for the purpose of influencing the nomination for election, or election, of any person to Federal office . . . .

Section 610, as pertinent, states that "[a]s used in this section, the phrase 'contribution or expenditure' shall include any direct or indirect payment . . . to any candidate, campaign committee, or political party or organization . . . ." Corporate communication to stockholders and non-partisan "get-out-the-vote" drives aimed at stockholders and their families are explicitly excluded.

The definition given "expenditure" in both sections traces back to the Federal Election Campaign Act of 1971, P.L. 92–225, Title II, §§ 201, 205, 86 Stat. 3. The drafters clearly intended § 591's definition to affect interpretation of § 610, for they expressly provided that the definitions in § 591 applied to use of those terms in § 610. We note also that § 591 indicates the "meaning" of expenditure while § 610 only indicates certain matters "included" in that term. We therefore read § 610 as supplementing rather than replacing § 591's defini-

---

8. The propriety of awarding such relief must depend on the circumstances of each case. We note also that where a non-stockholder plaintiff sues, presumably only for injunctive relief, there may be a question as to the plaintiff's ability to satisfy the $10,000 jurisdictional amount for 28 U.S.C. § 1331 (1970).

tion. Nothing specifically included as an expenditure for § 610, however, covers Bethlehem's challenged actions. Thus, it appears that the district court was correct in concluding that Bethlehem's challenged expenditures are not proscribed unless they fall within § 591's definition of "expenditure."

An integral part of § 591's definition of prohibited expenditures is the requirement that they be for the purpose of influencing someone's election to federal office—in other words, § 591 requires a partisan purpose. Plaintiff argues, however, that § 610, by negative implication in its exclusion of only some non-partisan get-out-the-vote drives, makes unlawful other get-out-the-vote drives, even though non-partisan. Plaintiff supports his contention by reference to legislative history.

Several comments by key Congressmen in debate over the most recent amendment to § 610 indicate that the section now would prohibit a non-partisan get-out-the-vote drive if financed from a corporation's general treasury and aimed at the general public. See, e. g., 117 Cong.Rec. 43380–81 (remarks of Congressman Hansen), 43381 (remarks of Congressmen Hansen and Hays), 43387–88 (remarks of Congressmen Ashbrook, Hansen and Hays). The debates also indicate that members of Congress had a fairly specific and limited type of activity in mind when speaking of "get-out-the-vote" drives, primarily door-to-door canvassing and escorting people to the polls, see *id.* at 43386 (remarks of Congressman Crane), 43387 (remarks of Congressman Ashbrook), 43388 (remarks of Congressman Hays), and that the primary concerns with such drives were, first, that they were generally non-partisan in name only, and, second, that their partisanship was not often apparent to observers, see *id.* at 43388 (remarks of Congressman Ashbrook), 43390 (remarks of Congressman Steiger).

### Application of § 610

The expenditures challenged here were for activities that would not seem to have the hallmarks of a "get-out-the-vote" drive—Bethlehem's communications were in writing and aimed at the entire public, rather than selected portions, so their partisanship, if any, could be readily determined. We would not, on the present record, find Bethlehem's expenditures for these communications, if non-partisan, to be proscribed by any prohibition on non-partisan get-out-the-vote drives that may be implicit in § 610. We turn to the inclusion or exclusion of these expenditures from the definition of that term in § 591.

The district court found that Bethlehem's expenditures were non-partisan and thus outside the sweep of § 591 and, hence, of § 610. This finding rests on the fact that no candidate or party was named in the corporation's ad and pamphlet. Unless § 591 requires that a candidate or party be named, the district court's grant of summary judgment cannot be upheld; the partisanship of Bethlehem's statements is a factual question as to which the parties are in dispute,[9] and on summary judgment we must accept as true plaintiff's allegation of partisanship. See Johnson v. Alldredge, 488 F.2d 820, 823 (3d Cir. 1973).

 Nothing in the language or legislative history supports an interpretation of sections 591 and 610 that would make lawful an expenditure simply because in the communication it paid for no candidate was named. There is no evidence Congress thought the American public so unperceptive that it would recognize a statement as supporting or attacking a particular candidate only by use of his name; such a requirement would eviscerate § 610. Since dispute

---

9. The definition of expenditure in § 591 requires a partisan purpose; we assume here that where a communication is the expenditure's direct product, the partisan purpose must appear from the communication's content, viewed in light of surrounding circumstances.

exists as to a material factual issue, the district court erred in granting summary judgment and denying plaintiff's motion for an evidentiary hearing.

## IV.

■■■ Defendants contend that § 610 is unconstitutional, urging a variety of grounds. Although defendants do not treat their various constitutional contentions separately, their underlying argument appears to be that, if applied to prohibit non-partisan political speech, § 610 would violate the First Amendment. Because we have decided that § 610 would proscribe Bethlehem's expenditures only if they financed partisan communications, we do not reach defendants constitutional contentions. See United States v. UAW, *supra,* 352 U.S. at 591–592, 77 S.Ct. 529, 1 L.Ed.2d 563. We note that the district court has never passed on these contentions and that they may be reasserted on remand.

The judgment of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion.

ALDISERT, Circuit Judge (dissenting).

Standing in this case does not trouble me. This is not a taxpayer's suit, Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L. Ed. 1078 (1923); nor a suit to obtain judicial review of agency action, United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970); nor a voter's complaint alleging impairment of his right to vote, Baker v. Carr, 369 U. S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Only the damages aspect of the complaint has survived the mootness of the injunctive request. Thus, the claim is reduced to a garden variety case or controversy in which a plaintiff stockholder asserts economic harm to the corporation for which he has standing derivatively on behalf of the corporation. Kauffman v. Dreyfus Fund, Inc., 434 F. 2d 727 (3d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).

I have heretofore expressed discomfort with certain decisions of this court regarding standing. *See,* United States v. Richardson, 465 F.2d 844 (3d Cir. 1972), (Adams, J., dissenting, joined by Aldisert and Hunter, JJ.), and Schiaffo v. Helstoski, 492 F.2d 413 (3d Cir., 1974) (Aldisert, J., dissenting.) And I would hope that the district courts and courts of appeals will soon receive definitive guidance in this "complicated specialty of federal jurisdiction, the solution of whose problems is in any event more or less determined by the specific circumstances of individual situations. . . ."[1] The Supreme Court has heard argument in two important standing cases, United States v. Richardson, *supra,* (No. 72–885, argued October 10, 1973), 42 U.S.L.W. 3216, and Richardson v. Reservists Committee to Stop the War, (No. 72–1188, argued January 14, 1974), 42 U.S.L.W. 3418.

The standing issue aside, I would affirm the district court because I find that Congress has not provided a civil remedy for the plaintiff expressly or by implication. While an implied right of action may be rationalized with considerable persuasion, this can be done only by defying the Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (Amtrak). I see Amtrak to be a definite signal to the courts of appeal and district courts to decelerate use of excerpts from Justice Clark's opinion in J. I.

---

1. United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953).

Case Co. v. Borak, 377 U.S. 426, 431–432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), to find implied civil remedies not expressly authorized by Congress. Three bright warning lights were flashed in Amtrak:

 1. "[T]he inference of . . . a private cause of action not otherwise authorized by the statute must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the Act."

 2. "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' Botany Worsted Mills v. United States, 278 U.S. 282, 289, [49 S.Ct. 129, 132, 73 L.Ed. 379] (1929). This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius*."

 3. "[T]he most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent. Neuberger v. Comm'r of Internal Revenue, 311 U.S. 83, 88, [61 S.Ct. 97, 85 L.Ed. 58] (1940)." 414 U.S. at 458, 94 S.Ct. at 693.

## I.

Amtrak's first principle, the imperative to ascertain legislative intention, requires that we examine the entire legislative package known as the Federal Election Campaign Act of 1971. This case is brought under Title II of the Act, containing amendments to Title 18 of the United States Code, including 18 U.S.C. § 610. There is no express provision for a civil remedy, public or private, in Title II. By contrast, Title III of the Act authorizes the Attorney General on behalf of the United States to commence a civil action for violation of its subchapter. *See*, 2 U.S.C. §

438(d)(1)–(5). This public cause of action in Title III supplements the penal provision of that Title, 2 U.S.C. § 441. *See also*, 11 C.F.R. §§ 20.10 and 20.11. In T.I.M.E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), the Court refused to imply a private right of action in favor of shippers under the Motor Carrier Act of 1935, 49 U.S.C. § 316(b) and (d) (Interstate Commerce Act, Part II), for overcharges by certified carriers. The government, as a shipper, brought suit against the carrier contending that this language imposed a statutory duty on motor carriers not to charge or collect other than "reasonable" rates and urged that a cause of action be implied. The Supreme Court refused to imply a cause of action. Noting that the provisions of Part I and III of the Interstate Commerce Act, relating to rail and water carriers, granted a private remedy to shippers, the Court emphasized that similar provisions were conspicuously absent in Part II relating to motor carriers. The Court said that creation of a remedy under these circumstances "would require a complete disregard of these significant omissions in Part II of the very provisions which establish and implement a similar right as against rail carriers in Part I." 359 U.S. at 471, 79 S.Ct. at 908. I would apply the *ratio decidendi* of T.I.M.E., Inc., to these proceedings.

Further, Congress recently has had occasion to reexamine § 610. In the course of amending this section and enacting the Federal Election Campaign Act of 1971, Congress did not provide a private remedy to supplement the express criminal sanctions.

I detect no language in this Act manifesting Congressional intent to create a private right of action by implication similar to J. I. Case Co. v. Borak, *supra*, and Texas & Pacific Railway Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L. Ed. 874 (1916). I therefore would accept the cogent reasoning of the Tenth Circuit in Chavez v. Freshpict Foods, Inc., 456 F.2d 890, 895 (10th Cir.), cert.

denied, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1972):

> We recognize that the tripartite classification of governmental powers—legislative, executive and judicial—has no absolutes, and that governmental functions are not easily defined as "legislative", "executive" or "judicial". But in the cases at bar the substantive rights relied upon by the appellants have been promulgated by Congress in the exercise of its power to enact penal statutes. In effect, appellants urge this court, under its classical adjudicative power, to legislate. When Congress was dealing with the subject matter of the statutes here involved, it was capable of clearly and directly providing the rights and remedies urged by the appellants.

## II.

I am persuaded that this is a classic case for the application of Amtrak's second principle which teaches: "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." A legislative schema expressly providing for a private remedy in one title of the Act and not in another title would call into play the familiar "principle of statutory construction [reflecting] an ancient maxim—*expressio unius est exclusio alterius*."

## III.

Amtrak's third principle, that statutory construction must yield to clear contrary legislative intent, renews the previous emphasis on Congressional intent. But appellant conceded at oral argument that the Congressional history is devoid of any reference to a private civil remedy. Therefore, we lack any semblance of contrary legislative intent, let alone clear contrary legislative intent.

It seems to me, therefore, that a discussion of the necessity for destroying the influence over elections which corporations exercise through financial contributions and the recognition that corporate officials have no right to use corporate funds improperly, United States v. C. I. O., 335 U.S. 106, 113, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948), is simply irrelevant to the narrow issue posed by this appeal: whether it can be properly concluded that a private civil right of action may be implied to supplement the penal provisions of Title II. Our polestar is Congressional intention. To imply such a right is to presume that Congress intended to provide for such an action, but overlooked its inclusion when the Federal Corrupt Practices Act was originally enacted, and that Congress overlooked it again when it enacted the comprehensive Federal Election Campaign Act of 1971. I cannot impute such derelictions to a Congress vitally concerned in a matter so universally discussed and the subject of manifest, if not all-consuming, public interest.

The Supreme Court's entreaty for restraint in Amtrak is justified. Otherwise a reasoned case for an implied private right of action could be constructed within the framework of every federal criminal statute simply by showing that plaintiff is "within the class Congress sought to protect by prohibiting" certain conduct. Three comprehensive criminal codes have been introduced in the 93rd Congress: S.1., "Criminal Justice Codification, Revision and Reform Act of 1973," described by its proponents, Senators McClellan, Ervin, and Hruska, as the lengthiest bill ever introduced in the Senate, exceeding the Internal Revenue Code of 1954; H.R. 6046; S. 1400, "Criminal Code Reform Act of 1973"; and H.R. 10047, reflecting the recommendations of the National Commission on Reform of Federal Criminal Laws, styled "Federal Criminal Code Reform Act of 1973." Every criminal statute is designed to protect some individual, public, or social interest. The criminal statutes define offenses involving danger to the person, against property, against public order, health, safety and sensibilities, as well as offenses against national security, foreign relations, immigration

and nationalization, integrity and effectiveness of government operations, internal revenue and customs, civil rights and elections. Is it to be inferred that Congress is also considering an unwritten, but *intended*, comprehensive civil code at the same time? I don't think so.

If the "ambit of protection" test were to be applied to every criminal statute by the court, then it would follow that, given particular circumstances, a remedy could be fashioned to afford civil relief upon the breach of every criminal statute. And thus the federal judiciary, and not the Congress, would be defining the metes and bounds of federal court jurisdiction. But there is no authority for this, because it is the Congress, and not the federal judiciary, which creates subject matter jurisdiction for the federal courts. *See*, Sheldon v. Sill, 8 How. 440, 12 L.Ed. 1147 (1850); Ex Parte McCardle, 7 Wall. 506, 19 L.Ed. 264 (1869).

I am persuaded that the Amtrak court could not fail to notice the plethora of implied civil remedy cases which arose from an unrestricted application of J. I. Case Co. v. Borak, *supra*, and an overgenerous use of Justice Black's overgenerous quotation in Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946), that "federal courts may use any available remedy to make good the wrong done." I am convinced that the Amtrak court consciously and deliberately applied the brakes and meant exactly what it said when it declared that a "private cause of action not otherwise authorized by the statute" may not be implied in the absence of clear "evidence of legislative intent."

Although I recognize that the Presidential election of 1972 is a matter of dominant national, sociological and political interest in 1974, an imperative of a detached decisional process commands that neutral principles of construction be employed in all our cases because of the precedential or institutional effect of our determinations. To find an implied civil cause of action for the plaintiff in this case is to find an implied civil right of action for every individual, social, or

public interest which might be invaded by violation of any criminal statute. To do this is to conclude that Congress intended to enact a civil code companion to the criminal code. And to do this is to suggest that for every written volume of Title 18 of the United States Code there is an unwritten volume of Title 28.

Because I cannot begin to accept this notion, I would affirm the judgment of the district court.

