Russell P. MILLER and Margaret Jane Miller, h/w

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY et al.

Civ. A. No. 72-798.

United States District Court, E. D. Pennsylvania.

March 31, 1975.

John C. Butera, King of Prussia, Pa., for plaintiffs.

Philip M. Hammett, Philadelphia, Pa., for defendants.

## OPINION

BECHTLE, District Judge.

Plaintiffs, Russell P. Miller and Margaret Jane Miller, filed this action against American Telephone & Telegraph Company ("AT&T") and the named members of the Board of Directors of AT&T ("the individual defendants") involving a $1,500,000 debt alleged by plaintiffs to be due AT&T from the Democratic National Committee, principally for telephone and other communication services rendered at the 1968 Democratic National Convention in Chicago, Illinois, and during the 1968 Presidential campaign. Federal diversity jurisdiction was invoked under 28 U.S.C. § 1332.

This Court previously dismissed plaintiffs' first amended complaint for failure to state a claim upon which relief could be granted. 364 F.Supp. 648 (E.D. Pa.1973). The Court of Appeals reversed that decision and remanded the case here, 507 F.2d 759 (3rd Cir. 1974), on the ground that the failure of AT&T to collect the debt conceivably constituted an illegal corporate campaign contribution in violation of 18 U.S.C. § 610 and, thus, a claim of breach of the individual defendants' fiduciary du-

ty to the corporation was sufficiently stated by the complaint to withstand a motion to dismiss.

Subsequent to the decision of the Court of Appeals, plaintiffs filed a second amended complaint consisting of two counts. The first count sets forth a stockholders' derivative action against the defendants seeking monetary and in-junctive relief. The second count, asserting private rights of action under the Federal Corrupt Practices Act, 18 U.S.C. § 610, and the Communications Act of 1934, 47 U.S.C. § 202, again seeks monetary and injunctive relief.

Before the Court are defendants' motions to dismiss the second amended complaint. The individual defendants move for dismissal of the complaint as to them for insufficiency of process and for lack of jurisdiction over the person of each of them. Alternatively, they move to dismiss Count II of the complaint as to them for lack of jurisdiction over the subject matter and for failure to state a claim against them upon which relief can be granted. Defendant AT&T moves to dismiss Count I of the complaint as to it for failure to state a claim upon which relief can be granted. AT&T moves to dismiss Count II as to it for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. For the reasons stated below, this Court agrees that plaintiffs' second amended complaint must be dismissed as to all of the defendants.

The facts relevant to a determination of these motions are not in dispute. Plaintiffs, citizens and residents of Pennsylvania, are the owners of 200 shares of AT&T common stock. At the end of June, 1974, there were outstanding approximately 557 million common shares and 48 million preferred shares of AT&T stock.

Defendant AT&T is a corporation organized and existing under the laws of the State of New York. It does business in Pennsylvania, but has its principal place of business and executive offices in New York City. The individual defendants were members of the Board of Directors of AT&T when this action began in 1972. None of them are citizens or residents of Pennsylvania,[1] and they reside in states scattered across the country: California, Georgia, Illinois, Massachusetts, New Jersey, Indiana, New York, North Carolina, Ohio, and Texas. Meetings of the Board of Directors of AT&T are normally held at the corporate headquarters in New York City, and at no time since September 1, 1968, the approximate date the debt arose, has the Board of Directors ever met in the Commonwealth of Pennsylvania. In fact, of the approximately 300 times the Board has met since 1952, only three of those meetings have been in Pennsylvania.

While they are related in substance, this Opinion will discuss separately the individual and corporate defendants' motions.

### The Individual Defendants

The individual defendants' motion to dismiss the second amended complaint, pursuant to Fed.R.Civ.P. 12(b)(2) and (4), for insufficiency of process and for lack of jurisdiction over the person of each of them must be granted. Rule 4(d)(7) of the Federal Rules of Civil Procedure permits service of process upon an individual to be made in the manner prescribed by a statute of the state in which the District Court is located. Plaintiffs contend that proper service of process upon the individual defendants was made in compliance with the Pennsylvania "long-arm" statute, 42 Pa. S. § 8301 et seq. (Supp.1974).[2] In

---

1. One other member of the Board of Directors, a citizen and resident of Pennsylvania, was not joined as an individual defendant in order to allow plaintiffs to preserve their claim to diversity jurisdiction.

2. In June 1972, when the service in question took place, the Pennsylvania Long-Arm Stat-

ute was codified at 12 Pa.Stat.Annot. §§ 341–346. These provisions were repealed and restated at 42 Pa. S. § 8301 et seq., which became effective February 13, 1973. Since there is no relevant variance between the old and new statutes, this Opinion reflects the agreement of the parties to treat the present-

particular, they rely on §§ 8304 and 8305 of that statute.

In determining this type of jurisdictional question, two issues are presented: First, whether the conduct of the defendants is within the relevant provisions of the statute; second, assuming the statutory requirements are satisfied, whether the application of those provisions to the particular circumstances of this case complies with the constitutional standard of due process of law. Each of the sections of the Pennsylvania statute alleged by plaintiffs to support the service of process here will be considered separately.

I. *Section 8304*

42 Pa.S. § 8304 provides, in pertinent part:

"§ 8304. Doing business by individuals

"Any nonresident of this Commonwealth who, acting individually under or through a fictitious business name, or through an agent, servant or employee, shall have done any business in this Commonwealth . . . shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding . . . against such individual, if and only if at the time the cause of action accrued or the harm or financial loss occurred, the nonresident . . . shall have been doing any business within this Commonwealth as heretofore provided."

The threshold question in determining whether service of process was proper under § 8304 is whether the individual defendants were "doing business"[3] in Pennsylvania within the meaning of the statute.

This Court believes that the language of § 8304 clearly requires plaintiffs to demonstrate the applicability of at least one of the § 8309 indicia to the individual defendants *qua* individuals, not as directors of AT&T. Their activities on behalf of the corporate defendant are not relevant to a finding of *in personam* jurisdiction over them as individuals under § 8304. In Yardis Corporation v. Cirami, 76 Misc. 2d 793, 351 N.Y.S.2d 586 (Nassau Cty. 1974), an action brought in New York against corporate and individual defendants to recover on a default judgment obtained in Pennsylvania, the individual defendants argued that service of process under the "long-arm" statute in the Pennsylvania action had been improper as they did not engage in any business in Pennsylvania as individuals. Any acts performed in Pennsylvania were as an officer and employee of the corporate defendant, a New York corporation. The court, which granted summary judgment in favor of the individual defendants on the ground that the Pennsylvania court had not obtained jurisdiction over them under the "long-arm" statute, concluded: "Under such circumstances the individual defendants were not doing business in Pennsylvania." 76 Misc.2d at 794, 351 N.Y.S. 2d at 587.

Plaintiffs have failed to allege any facts which would support a finding that the individual defendants in this case were "doing business" in Penn-

ly effective Pennsylvania Long-Arm Statute as applicable.

3. 42 Pa. S. § 8309(a) delineates what may constitute "doing business" as follows:
"(1) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.
"(2) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

"(3) The shipping of merchandise directly or indirectly into or through this Commonwealth.
"(4) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by the Commonwealth or any of its agencies.
"(5) The ownership, use or possession of any real property situate within this Commonwealth."

sylvania. Even if plaintiffs could allege some minimal or infrequent business activity within the Commonwealth by the individual defendants, the Pennsylvania Supreme Court has recently held that § 8304 requires a more significant degree of contact when the plaintiff's cause of action arises outside of Pennsylvania and not out of any business which the defendant conducts within the Commonwealth. The Court stated that, in such a case, the complaint must allege that the business activity of the defendant within Pennsylvania was "so continuous and substantial as to make it reasonable" for the trial court to exercise jurisdiction over him with respect to an unrelated cause of action. Bork v. Mills, 458 Pa. 228, 329 A.2d 247, 249 (1974).

Having failed to meet this burden, valid service of process on the individual defendants in this case cannot be based by plaintiffs on 42 Pa. S. § 8304. Pincus v. Mutual Assurance Co., 457 Pa. 94, 321 A.2d 906 (1974), relied on by plaintiffs, is distinguishable both on its facts and on the issue presented. Unlike the present case, there was no question in *Pincus* whether the corporate director defendants, apparently Pennsylvania residents, were doing business in the Commonwealth. The question was rather whether they could be served at the main corporate headquarters, located in Philadelphia, as well as the offices where they normally worked. This Court does not believe that the affirmative answer given to that question is apposite to a determination of the basic question under § 8304—namely, whether the individual defendants are "doing business" within Pennsylvania.

### II. *Section 8305*

42 Pa. S. § 8305 provides, in pertinent part:

> "§ 8305. Causing harm by individuals

> "Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth . . . shall be subject to service of process in any civil action or proceeding . . . arising out of or by reason of any such conduct. Service of process in any such civil action or proceeding shall be effected through the Department of State as provided in this chapter."

■■ While the language of § 8305 appears to provide a basis for holding valid the service of process on the individual defendants in this case, the Court believes that the exercise of personal jurisdiction over these defendants would clearly violate the Due Process Clause of the United States Constitution.[4]

---

4. The individual defendants have argued that § 8305 itself will not support service of process on them as to Count I of the second amended complaint, which sets forth a stockholders' derivative action. Since the plaintiffs in Count I are essentially pursuing the corporation's cause of action and it is AT&T which is the real party in interest, Knapp v. Bankers Securities Corporation, 230 F.2d 717, 720 (3rd Cir. 1956), the individual defendants contend that the relevant "harm" was to AT&T and occurred in New York, thus making § 8305 inapplicable. While this Court agrees that harm to AT&T in the form of loss of income and profits (the gravamen of Count I) should be considered to have occurred in New York, where it is incorporated and maintains its principal place of business, Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F.Supp. 1283, 1295 (E.D.

Pa.1973), the statutory language is broader than the individual defendants' argument indicates. Section 8305 requires only that "any harm" within Pennsylvania be evident which was caused by the same conduct from which the pending cause of action arises. Assuming harm to AT&T here, plaintiff shareholders have also been harmed to some extent and this is all that § 8305 requires on its face. This Court has serious doubts that the statute was intended to take cognizance of such indirect harm. However, rather than speculate as to how the Pennsylvania courts would construe the statutory language, this Court finds, as discussed above, that the assertion of *in personam* jurisdiction over the individual defendants here does not comply with the constitutional requisite of due process of law.

The due process standard enunciated by the Supreme Court as to when *in personam* jurisdiction may properly be exercised over a nonresident defendant is whether there are "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which [the party] has incurred there." International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Applying this test to the facts of the instant case, it is clear that the individual defendants do not have the necessary ties or contacts with Pennsylvania.

The only relationship which has been suggested between the Commonwealth and these defendants is that any actions taken by the directors of AT&T necessarily affect Pennsylvania residents. However, none of the activity, or lack of activity, complained of by plaintiffs took place in Pennsylvania. Moreover, there has been no allegation of any other contact, past or current, business or personal, direct or indirect, between these defendants and Pennsylvania. If this one indirect contact was to be considered sufficient to satisfy the requirements of the Due Process Clause, the still-existent restrictions on the personal jurisdiction of state courts, recognized in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), would be rendered meaningless as applied to directors of large, national corporations.

█ The sufficiency of an individual corporate director's contacts with a forum state must be measured on some basis other than the chance occurrence of some residents of the forum being stockholders or recipients of the corporation's services. Hanson v. Denckla, *supra* at 253, 78 S.Ct. at 1240, indicated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The place of residence of stockholders and customers is irrelevant and incidental to the actions taken by the individual defendants which are complained of here. Moreover, it is only in the most indirect way that the individual defendants' actions can be said to have been calculated to have an effect in the forum state.

While Pennsylvania may have an interest in protecting its citizens here, it is certainly no greater than that of any other state in the Nation. Moreover, the relative inconvenience to the parties is a factor weighing against the assertion of jurisdiction. While this issue is not often considered important in a determination of the due process question in this day of rapid and relatively inexpensive air travel, where the defendants reside in diverse geographic sectors of the country, have substantial contacts with a directly neighboring state and effectively no contact with the forum, such inconvenience takes on added significance.

A contrary ruling here would mean that any individual accepting a directorship of a national corporation would effectively be conceding *in personam* jurisdiction over himself or herself in any state with a statute similar to that of Pennsylvania. This Court believes that neither due process nor sound policy will permit such a result. Where the only occurrence in Pennsylvania is the indirect harm resulting to resident stockholders from the individual defendants' actions, the exercise of personal jurisdiction over these individuals would be both unreasonable and unconstitutional. Aamco Automatic Transmissions, Inc. v. Tayloe, 368 F.Supp. 1283 (E.D.Pa. 1973); Restatement (Second) of Conflict of Laws § 37 (1971).

### The Corporate Defendant

█ AT&T's motion to dismiss Count I of the second amended complaint, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim against it upon which relief can be granted, must

be considered meritorious in light of the Court's disposition of the individual defendants' motion. A stockholders' derivative suit charging fraudulent or improper action on the part of the corporation's directors, which seeks relief against them as individuals, cannot proceed in the absence of proper joinder of the directors as defendants. Castner v. First National Bank of Anchorage, 278 F.2d 376, 384 (9th Cir. 1960); Dowd v. Front Range Mines, Inc., 242 F.Supp. 591, 597 (D.Colo.1965).

 Although AT&T here, and any corporation involved in a stockholders' derivative suit, is properly made a nominal defendant, it must realistically be considered to be the complainant in the action. Thus, where none of the directors of the corporation have been made party defendants, a stockholders' derivative action must be dismissed for lack of a substantial defendant. Isaac v. Milton Mfg. Co., 33 F.Supp. 732, 737–738 (M.D.Pa.1940); Edwards v. Bay State Gas Co., 91 F. 942 (C.C.D.Del. 1898).

Count II of plaintiffs' second amended complaint must also be dismissed as against AT&T. Asserting private rights of action under 18 U.S.C. § 610 and 47 U.S.C. § 202, plaintiffs seek judgment in Count II "in favor of Plaintiffs and all other shareholders similarly situated." Specifically, the relief sought against AT&T is "a permanent injunction against the provision of further service by AT&T to the DNC until the payment of the amount due and owing." [5]

In Ash v. Cort, 496 F.2d 416, 424 (3rd Cir. 1974), cert. granted, 419 U.S. 992, 95 S.Ct. 302, 42 L.Ed.2d 264 (1974), Chief Judge Seitz stated that a private cause of action "brought by a citizen to secure injunctive relief or by a stockholder to secure injunctive or derivative damage relief" would be proper to remedy a violation of 18 U.S.C. § 610. However, he also noted that "where a non-stockholder plaintiff sues, presumably only for injunctive relief, there may be a question as to the plaintiff's ability to satisfy the $10,000 jurisdictional amount for 28 U.S.C. § 1331 (1970)." Id. at 424 n. 8.

The instant case poses precisely that question. The Court notes preliminarily that Count II does not state a derivative claim, but rather is an apparent attempt to state a class action. Defendants correctly point out that Count II of plaintiffs' second amended complaint fails to comply with the pleading requirements for class actions of both Rule 23 of the Federal Rules of Civil Procedure and Local Rule 45 of this District. However, it is unnecessary here to decide whether that failure alone would require the dismissal of Count II of the complaint.

Ash v. Cort, *supra*, authorized that damages be recovered by stockholders only on behalf of the corporation, not as individuals.[6] While not there faced with the issue, the Court of Appeals at least presumed that 18 U.S.C. § 610 would not provide a private cause of action for damages to an individual suing in his own right, rather than the corporation's. Id. at 424 n. 8.

Writing again for the Third Circuit some six months later in the opinion remanding the instant case to this Court, Chief Judge Seitz conspicuously omitted any reference to his opinion in Ash v. Cort. The Court of Appeals did reaffirm its belief that breach of 18 U.S.C. § 610 should give rise to a derivative cause of action by affected stockholders to force the return to the corporation of illegally contributed funds. 507 F.2d at 763. However, Chief Judge Seitz specifically left open for decision here

---

5. Against the individual defendants, Count II seeks: (1) damages in the amount of $1,-500,000 with interest; (2) counsel fees and costs; (3) an Order requiring appropriate action to recover the debt; and, (4) such other relief as may be reasonable and proper.

6. As noted above, Count II does not attempt to state a stockholders' derivative claim. If it did, similarly to Count I, dismissal of Count II would be required as against AT&T for lack of a substantial defendant.

the question whether a direct federal cause of action in plaintiffs' favor against the defendants should be implied. 507 F.2d at 765.

 This Court believes that a private right of action for direct damages should not be implied from either 18 U.S.C. § 610 or 47 U.S.C. § 202. Considering in particular 18 U.S.C. § 610, the interests reflected in that statute are: (1) To destroy the influence over elections which corporations exercise through financial contributions; and, (2) to prevent corporate officers from using corporate funds for contributions to political parties without the consent of the stockholders. United States v. C.I.O., 335 U.S. 106, 113, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948). This Court believes that those interests are very adequately protected by permitting, in addition to the penal sanctions provided for in the statute itself, private suits for injunctive or derivative damage relief.

Any tangible, economic injury suffered by plaintiffs as stockholders, due to their interest in AT&T having less value than it would now have if the individual defendants had not failed to pursue the alleged debt for the benefit of the corporate treasury, should presumably be remedied by a recovery of derivative damages equal to the size of the debt or "illegal contribution." Any further injury to plaintiffs from the allegedly illegal activity here, such as the lessening of their ability to secure a responsive Federal Government, is really shared in common with all of the nation's voters and citizens. Ash v. Cort, *supra* at 420, recognized this more widespread injury as both "intangible" and, when considered on an individual basis, "small."

This Court does not believe that the added enforcement value to be derived from permitting private damage actions under 18 U.S.C. § 610 is worth the multiplicity of possible suits to recover for this intangible public injury. However, even if the Court were to take cognizance of such claims, the small value which any particular plaintiff could place on his individual injury would present the same obstacle to maintenance of the suit as Ash v. Cort, *supra,* pinpointed in regard to a non-stockholder action for injunctive relief—namely, satisfaction of the jurisdictional amount requirement.

 Unlike a derivative claim, where the alleged $1,500,000 debt here could be viewed as a whole in order to meet the jurisdictional amount requirement, a class action for direct damages, assuming it was authorized, would not permit the aggregation of the claims of the class members in order to satisfy the requirement of 28 U.S.C. § 1331(a). Zahn v. International Paper Company, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969).[7]

7. If a cause of action for direct damages were permitted under 18 U.S.C. § 610, there is no apparent reason why the amount claimed would have to be limited to the amount of the alleged illegal contribution. This, however, is the measure of damages sought by plaintiffs, presumably on the theory that members of the class would recover on a pro rata basis equivalent to their holdings in AT&T. Plaintiffs' interest in the recovery, based on their owning a 200/557,000,000ths share of AT&T (before deduction of corporate income taxes thereon and disregarding the prior claims of approximately 48 million shares of preferred stock upon all the assets of AT&T) amounts to approximately 53 cents. Plaintiffs' claim alone clearly would not satisfy the $10,000 jurisdictional amount and, since such a suit for direct damages would not be to "enforce a single title or right, in which [the asserted class members] have a common and undivided interest," *Zahn, supra,* 414 U.S. at 294, 94 S.Ct. at 508, quoting from Troy Bank v. G. A. Whitehead & Company, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911), aggregation of the claims would not be possible. Moreover, under Zahn, even if there are AT&T shareholders whose claims would exceed $10,000, the present plaintiffs would not be permitted to maintain a class action as representatives of all other AT&T shareholders. *Id.* at 300, 94 S.Ct. 505.

■ In light of the Court's refusal to "imply" a private right of action here for direct damages,[8] and the inability of plaintiffs to meet the $10,000 jurisdictional amount with a claim for injunctive relief alone, Count II of the second amended complaint must be dismissed as against AT&T. Plaintiffs' alternative contention that Count II can be maintained under the doctrine of pendent jurisdiction must also be denied. Since Count I against AT&T is being dismissed, the exercise of pendent jurisdiction over Count II by this Court is not possible.

Accordingly, the individual and corporate defendants' motion to dismiss the second amended complaint will be granted.

8. It should be noted again that plaintiffs have not requested damages against the corporate defendant in Count II and have, as discussed earlier in this Opinion, failed to obtain personal jurisdiction over the individual defendants.