Russell P. MILLER and Margaret Jane Miller, his wife, Appellants,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY (hereafter AT&T) et al.

No. 73-2007.

United States Court of Appeals, Third Circuit.

Argued Sept. 3, 1974.

Decided Nov. 4, 1974.

Clarke F. Hess, King of Prussia, Pa.,
for appellants; Butera & Detwiler, King
of Prussia, Pa., of counsel.

Philip M. Hammett, Eugene A. Spector, Nicholas E. Chimicles, Philadelphia, Pa., for appellees; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

Before SEITZ, Chief Judge, GIBBONS and GARTH, Circuit Judges.

SEITZ, Chief Judge.

Plaintiffs, stockholders in American Telephone and Telegraph Company ("AT&T"), brought a stockholders' derivative action in the Eastern District of Pennsylvania against AT&T and all but one of its directors. The suit centered upon the failure of AT&T to collect an outstanding debt of some $1.5 million owed to the company by the Democratic National Committee ("DNC") for communications services provided by AT&T during the 1968 Democratic national convention. Federal diversity jurisdiction was invoked under 28 U.S.C. § 1332.

Plaintiffs' complaint alleged that "neither the officers or directors of AT&T have taken any action to recover the amount owed" from on or about August 20, 1968, when the debt was incurred, until May 31, 1972, the date plaintiffs' amended complaint was filed. The failure to collect was alleged to have involved a breach of the defendant directors' duty to exercise diligence in handling the affairs of the corporation, to have resulted in affording a preference to the DNC in collection procedures in violation of § 202(a) of the Communications Act of 1934, 47 U.S.C. § 202(a) (1970), and to have amounted to AT&T's making a "contribution" to the DNC in violation of a federal prohibition on corporate campaign spending, 18 U.S.C. § 610 (1970).[1]

Plaintiffs sought permanent relief in the form of an injunction requiring AT&T to collect the debt, an injunction against providing further services to the DNC until the debt was paid in full, and a surcharge for the benefit of the corporation against the defendant directors in the amount of the debt plus interest from the due date. A request for a preliminary injunction against the provision of services to the 1972 Democratic convention was denied by the district court after an evidentiary hearing.

On motion of the defendants, the district court dismissed the complaint for failure to state a claim upon which relief could be granted. 364 F.Supp. 648 (E.D.Pa.1973). The court stated that collection procedures were properly within the discretion of the directors whose determination would not be overturned by the court in the absence of an allegation that the conduct of the directors was "plainly illegal, unreasonable, or in breach of a fiduciary duty . . . ." *Id.* at 651. Plaintiffs appeal from dismissal of their complaint.

In viewing the motion to dismiss, we must consider all facts alleged in the complaint and every inference fairly deductible therefrom in the light most favorable to the plaintiffs. A complaint should not be dismissed unless it appears that the plaintiffs would not be entitled to relief under any facts which they might prove in support of their claim. Judging plaintiffs' complaint by these standards, we feel that it does state a claim upon which relief can be granted for breach of fiduciary duty arising from the alleged violation of 18 U.S.C. § 610.

### I.

The pertinent law on the question of the defendant directors' fiduciary duties in this diversity action is that of New York, the state of AT&T's incorporation.[2] *See* Perlman v. Feld-

---

1. This was the statute in force at the time of the 1968 Democratic convention. Amendments not pertinent to the problem before us were made by the Federal Election Campaign Act of 1971, 86 Stat. 3 (codified in scattered sections of 2, 18 U.S.C.). See

18 U.S.C. § 610 (1970), as amended (Supp. II, 1972).

2. Although plaintiffs alleged in their complaint that AT&T is a Delaware corporation, they have not suggested the incorrectness of

mann, 219 F.2d 173, 175 (2d Cir.), cert. denied, 349 U.S. 952, 75 S.Ct. 880, 99 L. Ed. 1277 (1955); Kroese v. General Castings Corporation, 179 F.2d 760, 765 (3d Cir.), cert. denied, 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950); Restatement (Second) of Conflicts § 309 (1971). The sound business judgment rule, the basis of the district court's dismissal of plaintiffs' complaint, expresses the unanimous decision of American courts to eschew intervention in corporate decision-making if the judgment of directors and officers in uninfluenced by personal considerations and is exercised in good faith. Pollitz v. Wabash Railroad Co., 207 N.Y. 113, 100 N.E. 721 (1912); Bayer v. Beran, 49 N.Y.S.2d 2, 4–7 (Sup.Ct.1944); 3 Fletcher, Private Corporations § 1039 (perm. ed. rev. vol. 1965). Underlying the rule is the assumption that reasonable diligence has been used in reaching the decision which the rule is invoked to justify. Casey v. Woodruff, 49 N.Y.S.2d 625, 643 (Sup. Ct.1944).

Had plaintiffs' complaint alleged only failure to pursue a corporate claim, application of the sound business judgment rule would support the district court's ruling that a shareholder could not attack the directors' decision. *See* United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917); Clifford v. Metropolitan Life Insurance Co., 264 App. Div. 168, 34 N.Y.S.2d 693 (2d Dept. 1942); 13 Fletcher, Private Corporations § 5822 (perm. ed. rev. vol. 1970). Where, however, the decision not to collect a debt owed the corporation is itself alleged to have been an illegal act, different rules apply. When New York law regarding such acts by directors is considered in conjunction with the underlying purposes of the particular statute involved here, we are convinced that the business judgment rule cannot insulate the defendant directors from liability if

they did in fact breach 18 U.S.C. § 610, as plaintiffs have charged.

■ Roth v. Robertson, 64 Misc. 343, 118 N.Y.S. 351 (Sup.Ct.1909), illustrates the proposition that even though committed to benefit the corporation, illegal acts may amount to a breach of fiduciary duty in New York. In *Roth*, the managing director of an amusement park company had allegedly used corporate funds to purchase the silence of persons who threatened to complain about unlawful Sunday operation of the park. Recovery from the defendant director was sustained on the ground that the money was an illegal payment:

> For reasons of public policy, we are clearly of the opinion that payments of corporate funds for such purposes as those disclosed in this case must be condemned, and officers of a corporation making them held to a strict accountability, and be compelled to refund the amounts so wasted for the benefit of stockholders. . . . To hold any other rule would be establishing a dangerous precedent, tacitly countenancing the wasting of corporate funds for purposes of corrupting public morals. *Id.* at 346, 118 N.Y.S. at 353.

The plaintiffs' complaint in the instant case alleges a similar "waste" of $1.5 million through an illegal campaign contribution.

Abrams v. Allen, 297 N.Y. 52, 74 N. E.2d 305 (1947), reflects an affirmation by the New York Court of Appeals of the principle of *Roth* that directors must be restrained from engaging in activities which are against public policy. In *Abrams* the court held that a cause of action was stated by an allegation in a derivative complaint that the directors of Remington Rand, Inc., had relocated corporate plants and curtailed production solely for the purpose of intimidating and punishing employees for their involvement in a labor dispute. The

---

the court's determination on the application for preliminary injunction that AT&T is in fact organized under the laws of New York.

We conclude, therefore, that plaintiffs have tacitly admitted that AT&T is a New York corporation, and we will treat it as such.

Court of Appeals acknowledged that, "depending on the circumstances," proof of the allegations in the complaint might sustain recovery, *inter alia*, under the rule that directors are liable for corporate loss caused by the commission of an "unlawful or immoral act." *Id.* at 55, 74 N.E.2d at 306. In support of its holding, the court noted that the closing of factories for the purpose alleged was opposed to the public policy of the state and nation as embodied in the New York Labor Law and the National Labor Relations Act. *Id.* at 56, 74 N.E.2d at 307.[3]

■ The alleged violation of the federal prohibition against corporate political contributions not only involves the corporation in criminal activity but similarly contravenes a policy of Congress clearly enunciated in 18 U.S.C. § 610.[4] That statute and its predecessor reflect congressional efforts: (1) to destroy the influence of corporations over elections through financial contributions and (2) to check the practice of using corporate funds to benefit political parties without the consent of the stockholders. United States v. CIO, 335 U.S. 106, 113, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948).

The fact that shareholders are within the class for whose protection the statute was enacted gives force to the argument that the alleged breach of that statute should give rise to a cause of action in those shareholders to force the return to the corporation of illegally contributed funds. Since political contributions by corporations can be checked and shareholder control over the political use of general corporate funds effectuated only if directors are restrained from causing the corporation to violate the statute, such a violation seems a particularly appropriate basis for finding breach of the defendant directors' fiduciary duty to the corporation. Under such circumstances, the directors cannot be insulated from liability on the ground that the contribution was made in the exercise of sound business judgment.

Since plaintiffs have alleged actual damage to the corporation from the transaction in the form of the loss of a $1.5 million increment to AT&T's treasury,[5] we conclude that the complaint does state a claim upon which relief can be granted sufficient to withstand a motion to dismiss.[6]

**II.**

■ We have accepted plaintiffs' allegation of a violation of 18 U.S.C. § 610 as a shorthand designation of the elements necessary to establish a breach of that statute. This is consonant with the federal practice of notice pleading. *See* Conley v. Gibson, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fed.R.

3. That violation of a federal statute is the basis of the breach of fiduciary duty and that therefore the court is required to interpret the federal statute has not d terred New York courts from entertaining such suits against directors. *See* Knopfler v. Bohen, 15 A.D.2d 922, 225 N.Y.S.2d 609 (2d Dept. 1962); *cf.* Simon v. Socony Vacuum Oil Co., 179 Misc. 202, 38 N.Y.S.2d 270 (Sup.Ct.1942).

4. We note that prior to June 1, 1974, corporate political contributions made "directly or indirectly" violated New York law. Law of July 20, 1965, ch. 1031, § 43, [1965] N.Y. Laws 1783 (repealed 1974). Furthermore, apart from the statutory prohibition, political donations by corporations were apparently ultra vires acts in New York. *See* People ex rel. Perkins v. Moss, 187 N.Y. 410, 80 N. E. 383 (1907). Corporations or organizations financially supported by corporations doing business in the state are now permitted to make contributions up to $5,000 per year. N.Y. Election Law § 480 (McKinney's Consol.Laws, c. 17, Supp.1974).

5. Under New York law, allegation of breach even of a federal statute is apparently insufficient to state a cause of action unless the breach caused independent damage to the corporation. *See* Diamond v. Davis, 263 App.Div. 68, 31 N.Y.S.2d 582 (1st Dept. 1941); Borden v. Cohen, 231 N.Y.S.2d 902 (Sup.Ct.1962). *But see* Runcie v. Bankers Trust Co., 6 N.Y.S.2d 623 (Sup.Ct.1938).

6. We express no opinion today on the question of whether plaintiffs' complaint may also state a cause of action for breach of fiduciary duty arising from the alleged violation of 47 U.S.C. § 202(a).

Civ.P. 8(f). That such a designation is sufficient for pleading purposes does not, however, relieve plaintiffs of their ultimate obligation to prove the elements of the statutory violation as part of their proof of breach of fiduciary duty. At the appropriate time, plaintiffs will be required to produce evidence sufficient to establish three distinct elements comprising a violation of 18 U.S.C. § 610: that AT&T (1) made a contribution of money or anything of value to the DNC (2) in connection with a federal election (3) for the purpose of influencing the outcome of that election. *See* United States v. Boyle, 157 U.S.App.D.C. 166, 482 F.2d 755, cert. denied, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); United States v. Lewis Food Co., Inc., 366 F.2d 710 (9th Cir. 1966). The first two of these elements are obvious from the face of the statute; the third was supplied by legislative history prior to being made explicit by 1972 amendments to definitions applicable to § 610.[7]

### A "Contribution" to the DNC

■ In proving a contribution to the DNC, plaintiffs will be required to establish that AT&T did in fact make a gift to the DNC of the value of the communications services provided to the 1968 Democratic convention. Such a gift could be shown, for example, by demonstrating that the services were provided with no intention to collect for them. Likewise, plaintiffs could meet their burden in this respect by proving that although a valid debt was created

at the time the services were rendered, that debt was discharged formally or informally by the defendants or is no longer legally collectible as a result of the defendants' failure to sue upon it within the appropriate period of limitation.[8] In any event, as a threshold matter, plaintiffs will be required to show that actions of the defendants have resulted in the surrender of a valid claim of $1.5 million for services rendered to the DNC.

### In Connection With a Federal Election

■ Plaintiffs must also establish that the contribution was in connection with a federal election. Obviously, the communications services were provided in connection with the 1968 election. If, however, a valid debt was created at that time and the alleged gift was made at some later time when the debt was forgiven or became legally uncollectible, the contribution may have been made in connection with a subsequent federal election. Plaintiffs did not allege the date of the contribution in their complaint, but their burden on remand will include establishing a nexus between the alleged gift and a federal election.

### For the Purpose of Influencing an Election

■ Finally, plaintiffs must also convince the fact finder that the gift, whenever made, was made for the purpose of aiding one candidate or party in a federal election. Proof of non-collection of a debt owed by the DNC will be insufficient to establish the statutory vi-

---

7. *See* United States v. UAW, 352 U.S. 567, 589, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957), where, after examining the legislative history and chronological development of federal prohibitions on campaign contributions by corporations and labor organizations, the Supreme Court stated: "The evil at which Congress has struck in § 313 [now 18 U.S.C. § 610] is the use of corporation or union funds to influence the public at large to vote for a particular candidate or a particular party."

As amended by the Federal Election Campaign Act of 1971 (effective April 7, 1972),

the definition of "contribution" for purposes of 18 U.S.C. § 610 is a gift of money or anything of value "made for the purpose of influencing the nomination for election, or election" of any person to federal office or for influencing the outcome of a primary or national nominating convention. 18 U.S.C. § 591 (1970), as amended (Supp. II 1972).

8. See 47 U.S.C. § 415(a) (1970) which requires communications carriers to commence actions for recovery of charges within one year from the time the cause of action accrues.

olation upon which the defendants' breach of fiduciary duty is predicated; plaintiffs must shoulder the burden of proving an impermissible motivation underlying the alleged inaction. In the absence of direct proof of a partisan purpose on the part of the defendants, plaintiffs may produce evidence sufficient to justify the inference that the only discernible reason for the failure to pursue the debtor was a desire to assist the Democratic Party in achieving success in a federal election. At a minimum, plaintiffs must establish that legitimate business justifications did not underlie the alleged inaction of the defendant directors. The possibility of the existence of such reasonable business motives illustrates the need for proof of more than mere non-collection even of the debt of a political party in order to establish a breach of 18 U.S.C. § 610.[9]

### III.

▪ In addition to advancing claims of breach of fiduciary duty by the defendants, plaintiffs have urged in this court that we "imply" a direct federal cause of action in their favor against the defendant directors for the alleged violations of 18 U.S.C. § 610 and 47 U.S.C. § 202(a). A federal law count was nowhere included in the plaintiffs' complaint and there is no indication in the record that this question was ever presented to the district court. After remand of this case, plaintiffs will have an opportunity to move to amend their complaint pursuant to Rule 15, Fed.R. Civ.P., and the district court will act upon any such motion within the discretion afforded under that rule.

The order of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.

---

9. Compiling an unsecured debt of this magnitude is no longer possible under new regulations of the Federal Communications Commission adopted May 5, 1972. The FCC regulations, 47 C.F.R. § 64.801–804 (1973), permit the granting of unsecured credit to political candidates but require termination of services if charges remain unpaid for 15

days and the debtor does not pay within 7 days after notice given "forthwith" upon expiration of the 15 day period. Common carriers are explicitly required to act to collect the unpaid balance prior to the running of the one year statute of limitations found in 47 U.S.C. § 415(a) (1970).