JAMES R. KLAUSER, Chairman State Elections Board
 I.
You have requested my opinion regarding the legality of foreign corporations, or of domestic corporations organized under chs. 180 or 181, Stats., or of associations organized under ch. 185, Stats., purchasing advertising in a publication of a political party and, conversely, of a political party selling advertising in one of its publications to such corporations or associations.
All foreign corporations and all domestic corporations organized under chs. 180 or 181, Stats., and all associations organized under Ch. 185, Stats., are prohibited from making either contributions or disbursements, directly or indirectly, to political parties and political parties are prohibited from accepting contributions from such corporations or associations. Secs. 11.38 (1) (a) 1 and (1) (b), Stats. Therefore, if the purchase of advertising is either a contribution or a disbursement, corporations and associations are prohibited from making same. However, political parties are prohibited only from receiving contributions and therefore if the purchase of advertising were deemed to be a disbursement, a party apparently would not be barred from receiving the same. Compare sec. 11.38
(1) (b), Stats., with sec. 11.38 (1) (a) 1, Stats.; but see sec.11.25 (1), Stats., prohibiting any "person, committee or group" from receiving a disbursement made "for political purposes contrary to law."[1]
A "contribution" is a transfer of anything of value made for political purposes. Sec. 11.05 (5) (a). Stats., defines the term in general[2] to mean: *Page 11 
 "A gift, subscription, loan, advance, or deposit of money or anything of value (except a loan of money by a national or state bank made by the bank in accordance with applicable banking laws and regulations in the ordinary course of business), made for political purposes. In this paragraph `anything of value' means a thing of merchantable value."
A disbursement is likewise a transfer of anything of value made for political purposes. Sec. 11.05 (6) (a), Stats., defines the term in general[3] to mean:
 "A purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value (except a loan of money by a national or state bank made by the bank in accordance with applicable banking law and regulations in the ordinary course of business), made for political purposes. In this paragraph, `anything of value' means a thing of merchantable value."
Both terms are broadly defined and to some extent these definitions are overlapping, hence blurring any distinction between the two. The use of two terms rather than one reflects the legislative intention to cover broadly all conceivable financial transactions undertaken for political purposes. SeeUnited States v. Congress of Industrial Organizations (1948),335 U.S. 106, 122, 68 S.Ct. 1349, 92 L.Ed. 1849.
Resolution of the question you pose, then, depends upon whether the corporate purchase of advertising from a political party, under any or all circumstances, is a transfer of "anything of value" done for "political purposes."
II.
In my opinion, something of value is transferred to, and received by, a political party when advertising is purchased in a party publication. Whether the party uses the advertising revenues to finance its publication or for some other purpose, those revenues in some way cover its cost of operation or otherwise further its purposes. This is so whether the charge for advertising is at a rate equal to, less or greater than, fair market value. Cf. Internal Revenue Code of 1954, sec. 276 (a) (1), as amended, *Page 12 26 U.S.C. sec. 276 (a) (1); Treas. Reg., secs. 1.276-1 (f) (3) (i) and (ii). Accordingly, the purchase of advertising by a corporation or association from a political party is prohibited by sec. 11.38
(1) (a) 1 and (1) (b), Stats., if that purchase is "for any political purpose."[4]
III.
Section 11.01 (15), Stats., defines an act undertaken for "political purposes" as follows:
 "An act is for `political purposes' when by its nature, intent or manner it directly or indirectly influences or tends to influence voting at any election. Such an act includes support or opposition to a person's present or future candidacy or to a present or future referendum . . . ."
Although sec. 5.02 (12), Stats., defines a "political party" as a "state committee registered under sec. 11.05 organized exclusively for political purposes . . .", all transfers of value to a political party are not necessarily contributions or disbursements. Contributions or disbursements are transfers of value "made for political purposes." Secs. 11.01 (5) (a) and (6) (a), Stats. Accordingly, determinative of whether a transfer of value is a contribution or disbursement is the "nature, intent or manner" in which the transaction is made, viewed from the standpoint of the transferor.[5] *Page 13 
If the transaction were viewed solely from the standpoint of the transferee, a supplier of goods and services, in the ordinary course of business and for adequate consideration, to a political party or other organization registered under sec. 11.05, Stats., would be deemed to have made a contribution or disbursement. The law certainly contemplates allowing political parties and other registrants under sec. 11.05, Stats., to purchase goods and services from corporate suppliers in the ordinary course of business and for adequate consideration.[6] To construe this statute otherwise would work an absurd and unreasonable result contrary to sound principles of statutory construction.Volunteers of America v. Industrial Commission (1966), 30 Wis.2d 607,616-617, 141 N.W.2d 890.
The definition of an "act for `political purposes'" in sec.11.01 (16), Stats., is broad. In the case of prohibited corporate political contributions, it is intended to be applied expansively to achieve the purposes of sec. 11.38, Stats., which is to destroy "the influence over elections which corporations [exercise] through financial contribution" and disable corporate officials from using "corporate funds for contribution to political parties without the consent of the stockholders."United States v. Congress of Industrial Organizations (1948),335 U.S. 106, 113, 68 S.Ct. 1349, 92 L.Ed. 1849 (construing a federal statute similar to sec. 11.38, Stats.). However, each case involving an alleged violation of sec. 11.38, Stats., must be considered in light of the applicable principles of statutory construction and constitutional limitations. See Buckley v. Valeo
(U.S. Sup.Ct. Jan. 27, 1976), 44 U.S. L. Week 4127, 4134 n. 24.
Violation of sec. 11.38, Stats., is a crime under the provisions of sec. 11.61, Stats. Therefore the statute is penal in nature and must be strictly construed. State v. Joe Must CoClub (1955), 270 Wis. 108, 70 N.W.2d 681; State v. Bronston
(1959), 7 Wis.2d 627, 97 N.W.2d 504. An act which serves legitimate interests *Page 14 
other than political might not come within the statutory prohibition. Miller v. American Telephone and Telegraph Co. (3d Cir. 1974), 507 F.2d 759, 764-765. That case was a shareholders' derivative suit challenging the corporation's failure to collect a $1.5 million debt owed by the Democratic Party, based upon the theory that the uncollected debt was an illegal political contribution under 18 U.S.C. sec. 610. The court held that plaintiff "at minimum must establish that legitimate business justifications did not underlie the alleged inaction [failure to collect the debt] of the defendant directors." 507 F.2d at 765.
Furthermore, sec. 11.38, Stats., might be unconstitutional as applied if it were construed to prohibit all business transactions between a political party as vendor of goods and services and a business corporation or a cooperative association as vendee of those goods and services. United States v. FirstNational Bank of Cincinnati (S.D. Ohio 1971), 329 F. Supp. 1251. That case held that a national bank would be deprived of Fifth Amendment property rights if the making of a loan in the ordinary course of business to a candidate for public office were deemed to be a prohibited corporate political contribution or expenditure under 18 U.S.C. sec. 610.[7] Likewise, an application of the statute that would result in the denial of First Amendment rights would be unconstitutional. Buckley v.Valeo (U.S. Sup.Ct. Jan. 27, 1976), 44 U.S. L. Week 4127, 4150-4151; United States v. Congress of Industrial Organizations
(1948), 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849; cf. UnitedStates v. Chestnut (S.D. N.Y. 1975), 394 F. Supp. 581, 588-591.
IV.
Every financial transaction between a corporation or association and a political party is not a per se violation of sec. 11.38, Stats. Determination of a violation depends upon a case-by-case analysis. This is not to say, however, that many such transactions would be permissible, particularly since in most such transactions (as with the sale of advertising in a party publication), the effect of the transaction is to promote the party's political interests. A corporate advertiser would bear the heavy burden of establishing that its advertising purchase was not, at least in part, intended to further those political purposes. *Page 15 
Relevant factors to consider in determining the purpose intended by the corporate purchase of advertising from a political party include whether the rate paid exceeds the fair market value; whether the content of the advertising directly promotes the seller-party's political philosophy; whether there is a reasonable expectation of the advertiser receiving business as a direct result of such advertising; and the probable disallowance of the advertising expense for income tax purposes under sec. 276, Internal Revenue Code 1954, as amended.
Nevertheless, advertising purchased at a rate not greater than its fair market value and restricted solely to a direct solicitation of business which the advertiser can reasonably expect to come from the audience reached by the party publication might be permissible. For example, a corporate supplier of campaign materials would have a legitimate business interest in the specific market reached by a party publication. Likewise, some corporate businesses serving the area in which a political convention is to be held, such as those providing accommodations or entertainment, would have a legitimate business interest in reaching the subscribers to a political party publication in advance of the convention. Situations such as these would have to be closely scrutinized, but they certainly describe circumstances where advertising such as that with which you are concerned may be permissible.
To summarize, the prohibition against corporate political contributions and disbursements in sec. 11.38, Stats., is broad and probably would bar, in most cases, purchases of advertising by a corporation in a political party publication. But the bar is not absolute and violations must be determined on a case-by-case basis. To facilitate its evaluation of cases involving advertising purchases from political parties by corporations, the Elections Board may want to consider adoption of rules for this purpose pursuant to see. 227.014 (2), Stats.
BCL:DJH
[1] See note 5, infra.
[2] Subsections (b) through (g) define particular types of contributions consistent with the general definition.
[3] Subsections (b) and (c) define particular types to disbursements consistent with the general definition.
[4] Section 11.38 (1) (a) 1, Stats., specifically prohibits contributions or disbursements "to any political party, . . . for any political purpose or to promote or defeat the candidacy ofany person for nomination or election to any public office or anyreferendum to be submitted to the voters." (Emphasis supplied.) An act "in support" or "in opposition to" a candidate for public office, however, "does not include the making of a contribution or disbursement for the maintenance of permanent offices or the employment of continuing staff for a continuing political party or permanent committee." Sec. 11.01 (10), Stats. (Emphasis supplied.) Therefore, to the extent that advertising revenues are used to pay for overhead expenses of the political party in whose publication the advertising is placed, those revenues are not contributions or disbursements barred by sec. 11.38 (1) (a) 1 or (1) (b), Stats., unless they serve other "political purposes" of the advertiser. See generally, discussion in part III of this opinion.
[5] While purchases of advertising in a political party publication arguably better fit the concept of a disbursement rather than that of a contribution they should be considered contributions, if made for political purposes. The structure of campaign finance reporting under ch. 11, Stats., is such that a registered organization's receipts are considered to be contributions and its expenditures are considered to be disbursements. See, e.g., State of Wisconsin Form EB-2,, ElectionCampaign Financial Report, and particularly Schedules 1 and 2.
This construction is supported by the holding in United Statesv. Chestnut (S.D. N.Y. 1975), 394 F. Supp. 581, 586-587. The court there found that the additional prohibition upon corporate disbursements imposed by 18 U.S.C. sec. 610 (which is similar in form to sec. 11.38, Stats.) applied not to payments made to a political organization (and therefore received by same as a contribution), but rather to the "use by a corporation . . . of its funds to promote its own political views . . . ."394 F. Supp. at 387.
If a purchase of advertising from a political party is deemed a contribution, the apparent anomaly between secs. 11.38 (1) (a) 1 and (1) (b), Stats., is resolved. It is a prohibited transaction on the part of both the purchaser-corporation or association and the seller-political party.
[6] Such transactions are, of course, reportable as disbursements by the registered political organization. See sec.11.06 (1), Stats.
[7] Wherein the terms "contribution" and "expenditure" have meanings similar to the definitions of "contribution" and "disbursement," respectively, in secs. 11.01 (5) and (6), Stats. See 18 U.S.C. sec. 591 (e) and (f). *Page 16