GERALD J. FERWERDA, Executive Secretary Elections Board
You have requested my opinion concerning the constitutionality of the ban on corporate financing of election campaigns imposed by sec. 11.38, Stats., in light of the recent United States Supreme Court opinion in First National Bank of Boston v.Bellotti, 435 U.S. 765 98 S.Ct. 1407 (1978). You also seek directions as to what action the Elections Board should take if it is determined that the statutory ban cannot be constitutionally applied in whole or in part.
The Bellotti decision held that a Massachusetts law that limited corporate expenditures aimed at influencing referendum votes was unconstitutional under the first andfourteenth amendments to the United States Constitution. Although your request presents a number of questions concerning the effect ofBellotti on sec. 11.38, Stats., this opinion will only address whether the similar prohibition against corporate spending in referendum elections, as set forth in sec. 11.38, Stats., is made unconstitutional as a result of that decision. The balance of your questions will be treated in a subsequent opinion. *Page 212 
Section 11.38 (1)(a)1., Stats., sets forth a general prohibition against direct or indirect contributions or disbursements for political purposes by a foreign corporation, a domestic corporation (normally organized as a business corporation under ch. 180, Stats., or as a nonstock corporation under ch. 181, Stats.) or an association incorporated as a cooperative under ch. 185, Stats., in the following
 "No foreign or domestic corporation, or association organized under ch. 185, may make any contribution or disbursement, directly or indirectly, to any political party, committee, group, candidate or individual for any political purpose or to promote or defeat the candidacy of any person for nomination or election to any public office or any referendum to be submitted to the voters."
Section 11.38, Stats., does allow such corporations and associations to engage in a few related activities, such as the establishment and administration of a separate segregated fund, to be utilized for political purposes, for which it can solicit funds, but to which it cannot contribute. Sec. 11.38 (1)(a)2., Stats. See 67 Op. Att'y Gen. 193 (1978). Likewise, they may also publish periodicals in the regular course of their affairs which advise their members, shareholders or subscribers of the disadvantages or advantages to their interests of voting in a particular manner at any election. Sec. 11.38 (2)(b), Stats.
Violation of sec. 11.38, Stats., is punishable not only by forfeiture under sec. 11.60, Stats., but also by fine or imprisonment under sec. 11.61 (1)(c), Stats. The statute is therefore penal in nature and must be strictly construed. Capt.Soma Boat Line, Inc. v. Wisconsin Dells, 56 Wis.2d 838, 845,203 N.W.2d 369 (1973). See also 65 Op. Att'y Gen. 10, 12 (1976).
The Bellotti case involved a Massachusetts law somewhat similar to sec. 11.38, Stats., in that it contained a broad prohibition against certain corporations and companies making contributions or expenditures
 ". . . for the purpose of aiding, promoting or preventing the nomination or election of any person to public office, or aiding, promoting or antagonizing the interests of any political party, or influencing or affecting the vote on any question submitted to *Page 213 
the voters, other than one materially affecting any of the property, business or assets of the corporation . . . ." Mass. Gen. Laws Ann. ch. 55, sec. 8 (West. Supp. 1977-1978).
The constitutionality of the law was challenged by a number of banks and business corporations which had wanted to spend money to publicize their position on a constitutional amendment proposed as a ballot question at the November, 1976, general election. Massachusetts advanced two principal justifications for the prohibition of corporate speech, i.e., the state's interest in sustaining the role of the individual in the electoral process by preventing undue corporate influence on the outcome of the referendum vote and its interest in protecting corporate shareholders whose views differ from those expressed by the corporation. Indicating that the first amendment question posed by the Massachusetts law was "whether the corporate identity of the speaker deprives this proposed speech of what otherwise would be its clear entitlement to protection," 98 S. Ct. 1416, the Supreme Court stated the test to be applied, as follows:
 "The constitutionality of sec. 8'S prohibition of the `exposition of ideas' by corporations turns on whether it can survive the exacting scrutiny necessitated by a state-imposed restriction of freedom of speech. Especially where, as here, a prohibition is directed at speech itself, and the speech is intimately related to the process of governing, `the State may prevail only upon showing a subordinating interest which is compelling,' . . . `and the burden is on the Government to show the existence of such an interest.' . . . Even then, the State must employ means `closely drawn to avoid unnecessary abridgment . . . .' . . . ." 98 S.Ct. 1421.
In its 5-4 decision the Court held that the statutory prohibition at issue failed to meet these standards under thefirst amendment, as made applicable to the states by thefourteenth amendment, stating at 98 S.Ct. 1422:
 ". . . However weighty these interests may be in the context of partisan candidate elections, they either are not implicated in this case or are not served at all, or in other than a random manner, by the prohibition in sec. 8.
Wisconsin Constitution art. I, secs. 3 and 4, guarantee the same freedom of speech and right of petition as do the first and *Page 214 
fourteenth amendments to the United States Constitution. Lawson v. HousingAuthority, 270 Wis. 269, 70 N.W.2d 605 (1955), cert. denied,350 U.S. 882.
The reasoning and the conclusions reached in Bellotti are clearly applicable to the provisions of sec. 11.38, Stats., which prohibit corporate or cooperative contributions or disbursements in support or opposition to any referendum to be submitted to the voters, and such prohibition must be considered unconstitutional under both the federal and state constitutions.
Having concluded that the sec. 11.38 (1)(a)1., Stats., ban on corporate spending on referendum questions is unconstitutional, it is necessary to consider the application of the campaign finance registration and reporting requirements to such spending.
Corporations and cooperatives may be treated as "persons" under the provisions of ch. 11, Stats., see sec. 990.01 (26), Stats., and to the extent that corporate spending for referendum elections is now allowable under sec. 11.38 (1) (a) 1., Stats., spending for such purpose is fully subject to the requirements and limitations otherwise set forth in that chapter, including those requiring registration and filing. See secs. 11.05, 11.06,11.20 and 11.23, Stats.
Any prior opinions of this office construing sec. 11.38, Stats., including those reported in 65 Op. Att'y Gen. 10 (1976) and 65 Op. Att'y Gen. 145, 158 (1976), are modified to the extent they may be inconsistent with this opinion.
BCL:JCM