PD-1636-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/20/2015 2:23:35 PM
Accepted 2/25/2015 10:24:44 AM
ABEL ACOSTA
CLERK

No. PD-1636-14

# In the Court of Criminal Appeals of Texas

WALTER DEMOND,
*Petitioner*,

v.

THE STATE OF TEXAS,
*Respondent.*

On Petition for Discretionary Review from the
Third Court of Appeals at Austin, Texas
Case No. 03-11-00553-CR

## REPLY TO RESPONSE TO PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

February 25, 2015

ABEL ACOSTA, CLERK

James C. Ho
   State Bar No. 24052766
Prerak Shah
   State Bar No. 24075053
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel.: (214) 698-3264
Fax: (214) 571-2917
*jho@gibsondunn.com*
*pshah@gibsondunn.com*

COUNSEL FOR PETITIONER

## TABLE OF CONTENTS

Index of Authorities ....................................................................................... ii

Argument......................................................................................................2

    I.   Fuelberg did not commit a crime—and the only way to affirm Demond's conviction is to misconstrue Texas Penal Code § 32.45.....................................................................................2

    II.  Moreover, Demond did not commit a crime—and the only way to affirm his conviction under the law of parties is to ignore this Court's precedent. ......................................................5

    III. The Third Court's decision will have grave consequence on legal and business decision-making. ......................................................7

Prayer for Relief.......................................................................................10

Certificate of Compliance .......................................................................11

Proof of Service .......................................................................................11

i

# INDEX OF AUTHORITIES

## Cases

*Amaya v. State*,
733 S.W.2d 168 (Tex. Crim. App. 1986)...............................................................5

*Batey v. Droluk*,
2014 WL 1408115 (Tex. App.—Houston [1st Dist.] Apr. 10, 2014, no pet.).......8

*Cates v. Sparkman*,
11 S.W. 846 (Tex. 1889)........................................................................................8

*Demond v. State*,
2014 WL 6612510 (Tex. App.—Austin Nov. 21, 2014, pet. filed)..........2, 3, 4, 8

*Gearhart Indus., Inc. v. Smith Int'l, Inc.*,
741 F.2d 707 (5th Cir. 1984)..................................................................................8

*Miller v. Am. Tel. & Tel. Co.*,
507 F.2d 759 (3d Cir. 1974)....................................................................................8

*United States v. D'Amato*,
39 F.3d 1249 (2d Cir. 1994)....................................................................................9

## Statutes

TEX. PENAL CODE § 32.45...........................................................................................9

TEX. PENAL CODE § 32.45(a)(2) .............................................................................3, 4

TEX. PENAL CODE § 7.02..............................................................................................2

## Rules

TEX. R. APP. P. 66.3(b)-(d)..........................................................................................2

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

The Third Court's decision to affirm Walter Demond's convictions was not only incorrect; it begs for this Court's review. The decision was contrary to statutory text, contrary to this Court's precedents, and will have drastic consequences on legal and business decision-making in this State.

The State has no meaningful response to the issues raised by Demond's Petition for Review. Indeed, the State's response is notable for what it does *not* say. It does not dispute that Fuelberg had the authority to hire outside consultants. It does not dispute that the jury in this case was asked to convict an outside counsel based on their review of someone else's discretionary business decisions (and with the benefit of hindsight). It does not dispute that outside counsel can no longer rely on the mere approval of a CEO or general counsel to bill a company for particular expenses in a particular manner. And, incredibly, it does not even cite *Amaya v. State*, 733 S.W.2d 168 (Tex. Crim. App. 1986) (en banc), which declared that to be liable of the crime of misapplication under the law of parties, the State must prove beyond a reasonable doubt that the defendant knew he was assisting a crime—which did not occur here.

Accordingly, the Petition for Discretionary Review should be granted.

1

This Court takes into account various factors when deciding whether to grant a petition for discretionary review, including whether the decision below (1) misconstrues a statute; (2) conflicts with a decision of this Court; or (3) decides an important question of state law that should be settled by this Court. TEX. R. APP. P. 66.3(b)-(d). This case meets all three of those factors.

## I. Fuelberg did not commit a crime—and the only way to affirm Demond's conviction is to misconstrue Texas Penal Code § 32.45.

The court of appeals misconstrued Texas Penal Code § 32.45. As fully explained in the Petition, if section 32.45 is applied correctly, there is insufficient evidence to convict Demond.[1] PDR 3-12.

The State attempts to defend the conviction by arguing that:

> On this evidence, the jury could have reasonably concluded beyond a reasonable doubt (1) that Fuelberg held PEC property as a fiduciary, (2) that Fuelberg and Petitioner intentionally and knowingly subjected that property to a substantial risk of loss by funneling it to Fuelberg's brother (Curtis) and the son of a PEC board member (Bill Price) through arrangements in which they knew PEC would receive little or no benefit, and finally (3) that Petitioner's role in the scheme—utilizing his law firm

---

[1] Demond was convicted of misapplication under the law of parties. *Demond v. State*, 2014 WL 6612510, at *12 (Tex. App.—Austin Nov. 21, 2014, pet. filed). For a defendant to be guilty under the law of parties, a principal actor—in this case Bennie Fuelberg—must commit the underlying offense. TEX. PENAL CODE § 7.02. Therefore, the State had to prove Fuelberg committed misapplication. The State argues that Demond's guilt is not contingent on Fuelberg's conviction. Resp. 12. That is correct. But while Demond's guilt is not contingent on Fuelberg's *conviction*, it is contingent on whether Fuelberg actually committed the offense.

2

to make these sham hires—made him guilty as a party to Fuelberg's misapplication.

Resp. 3-4.

The State's response is revealing in what it does not say. To convict Demond, the State had to prove that Fuelberg misapplied property by "deal[ing] with property contrary to . . . an agreement under which the fiduciary holds the property." TEX. PENAL CODE § 32.45(a)(2). But the State's rundown of what the jury could have reasonably concluded conspicuously omits any discussion of an agreement violated by Fuelberg.

That is because no such agreement exists. Rather, the undisputed evidence demonstrates that Fuelberg had absolute authority to hire the outside consultants at issue in this case. *See, e.g.*, 10.RR.199-200; 12.RR.8-10; 13.RR.35-37; 13.RR.189-191; *Demond*, 2014 WL 6612510, at *6 (the "undisputed evidence admitted at trial established that Fuelberg had broad authority to hire both PEC employees and outside consultants," and there was "no evidence to indicate that any other PEC bylaw limited Fuelberg's authority to hire outside consultants").

So Fuelberg never dealt with PEC funds contrary to any agreement—and thus the misapplication conviction here must be reversed.

Later in its response, the State does argue that "the extensive effort Fuelberg and Petitioner undertook to conceal the arrangements—from both the PEC board and

3

from Petitioner's law partners—was strong circumstantial evidence that they knew the board would not approve of them." Resp. 6.

But even assuming *arguendo* that the State's conclusion is a reasonable interpretation of the evidence (which it is not)[2], that is still plainly insufficient to affirm. Again, Fuelberg only committed misapplication if he "deal[t] with property contrary to . . . an agreement under which the fiduciary holds the property." TEX. PENAL CODE § 32.45(a)(2). Here, there was no agreement to "not do things that he thought the board would not approve of"—just an employment agreement that gave Fuelberg the authority to hire outside consultants, but has boilerplate language requiring him to "perform all of his duties properly and faithfully in the best interest of the PEC." *Demond*, 2014 WL 6612510, at *7.

Perhaps the State thinks that boilerplate language means Fuelberg commits a crime when he does something he thought the board would not approve of. But if that is truly what the State is arguing, then this prosecution is even more troubling: a CEO can now face felony charges if he does something he is authorized to do, so long as a

---

[2] Even the Third Court acknowledged that there was no evidence suggesting that Fuelberg "induced the PEC to make payments it otherwise would not have made." *Demond*, 2014 WL 6612510, at *14. *See also id*. at *12-13 (finding "no direct testimony to [the] effect" that "the PEC would have potentially reined in or revoked Fuelberg's authority to hire outside consultants had the PEC known that its funds were being paid to Curtis and Price"; "none of the [PEC] directors testified that the board would have stepped in and blocked these payments. . . . [N]one of the directors testified that had they known that Curtis and Price were being paid through Clark Thomas, they would have recommended that the PEC's nepotism policy be modified to cover outside consultants. . . . [N]o witness testified that had either the PEC's accounting department or board of directors known about these payments, they would have considered terminating Fuelberg's employment or reining in his authority").

prosecutor can convince a jury that the CEO thought his Board may not have liked what he did. That cannot possibly be correct.

## II. Moreover, Demond did not commit a crime—and the only way to affirm his conviction under the law of parties is to ignore this Court's precedent.

The prosecution of Demond is doubly flawed. Separate and apart from Fuelberg's innocence, Demond cannot be guilty under the law of parties unless he *knew* he was facilitating a *crime*. The Third Court's holding otherwise is contrary to this Court's precedent.

In *Amaya*, this Court held that a defendant cannot be convicted under the law of parties "without some indication that [he] knew [he] w[as] assisting in the commission of an *offense*." 733 S.W.2d at 174 (emphasis in original). Otherwise, "criminal complicity would extend to all those who perform acts that happen to assist in a criminal undertaking, even though there was no knowledge that a crime was being assisted." *Id*.

*Amaya* centered not on the ignorance of the conduct, but on the ignorance that the conduct constituted an offense, because "the conduct prohibited is not inherently criminal." *Id.* The Court acknowledged that the defendant was embroiled in a criminal scheme, but held that no rational juror could have found a violation beyond a reasonable doubt, because the evidence was insufficient to show that the defendant had acted with the intent to promote or assist in its commission. *Id.* at 175.

5

Tellingly, the State failed to even mention *Amaya* in its Response—because there is no way around its binding precedent. In this case, there is no evidence that Demond had any idea that hiring Curtis and Price was a *crime*. Therefore, in light of this Court's holding in *Amaya*, Demond cannot be guilty of misapplication of fiduciary property under the law of parties.

The best the State can offer is that "[i]t was reasonable for the jury to conclude that Petitioner, as PEC's attorney, would have been familiar with those provisions [that the State thinks Fuelberg acted contrary to in a manner sufficient to justify criminal prosecution]." Resp. 4-5.

But that is rank speculation, without any evidentiary support (unsurprisingly, the State provides no record citation). It is unclear why the State thinks Demond—an outside energy lawyer—would be familiar with the minutiae of his client's CEO's employment agreement. Moreover, even if Demond had known the terms of Fuelberg's employment contract, he was obviously not required to second-guess a CEO's estimation of whether hiring outside consultants was or was not an "unauthorized appropriation" of his company's funds. The State's apparent belief otherwise only further underscores how radical this prosecution is.

The evidence does not remotely establish that Demond knew his conduct constituted a *crime*. It shows he followed his client's designated representative's instructions with regards to billing procedures. It would be absurd to conclude

6

Demond knew he was facilitating a *crime* based on those billing instructions—particularly in light of the legitimate business reasons Fuelberg gave him.

If the Third Court's opinion stands, outside counsel can no longer rely on the approval of a CEO or general counsel to bill the company for particular expenses in a particular manner. Instead, a lawyer may need to confirm every billing practice with the company's board of directors, and perhaps the Attorney General as well.

But make no mistake: that is the inevitable consequence of the State's theory. In its response, the State takes care to point out that Demond's client was the PEC, not Fuelberg—suggesting that it was Demond's duty to confirm with his true client before agreeing to the billing practices in question. Resp. 6. Indeed, the State thinks that Demond should have known "Fuelberg was no longer acting in the interest of PEC," *id.*, when he chose to spend 0.0048 percent of a single year's operating budget to retain a lobbyist and local counsel—thus demanding that outside counsel second-guess the business decisions of their client's executives or face jail time. Needless to say, the State's position here is troubling.

## III. The Third Court's decision will have grave consequence on legal and business decision-making.

Finally, this Court should grant the petition because this case raises a host of novel legal theories that will have a significant effect on the relationship between Texas businesses and their outside lawyers. This Court should settle those important issues for the benefit of the entire state.

7

The Third Court essentially held that an authorized expenditure may become unauthorized if a jury, with hindsight, determines that it was ill-advised or wasteful. Specifically, the court declared the Curtis and Price engagements violated Fuelberg's duty, under his employment contract, to "perform all of his duties properly and faithfully in the best interest of the PEC." *Demond*, 2014 WL 6612510, at \*7. It is frightening to imagine empowering jurors to convict an executive simply because they disagree—with the benefit of hindsight—on whether certain actions were or were not in the best interest of his company. The holding below transforms boilerplate language in an employment agreement into the basis of a criminal conviction.

The Third Court should have avoided hinging criminal liability on a jury's second-guessing of a CEO's commercial assessment of the value of intangible goods by applying the same business judgment rule that shields corporate executives from liability for unwise decisions in innumerable contexts. That rule reflects "the unanimous decision of American courts to eschew intervention in corporate decision-making." *See Miller v. Am. Tel. & Tel. Co.*, 507 F.2d 759, 762 (3d Cir. 1974). Texas courts also will not impose liability upon a corporate director for mistakes of business judgment that damage corporate interests. *See, e.g.*, *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 721 (5th Cir. 1984); *Cates v. Sparkman*, 11 S.W. 846, 849 (Tex. 1889); *Batey v. Droluk*, 2014 WL 1408115, at \*13 (Tex. App.—Houston [1st Dist.] Apr. 10, 2014, no pet.).

8

The business judgment rule applies not only in civil cases—it can apply in the criminal context as well. *See, e.g.*, *United States v. D'Amato*, 39 F.3d 1249, 1258 (2d Cir. 1994). And for good reason.

The State, however, worries that if the rule is applied in the criminal context, it would prevent any misapplication conviction arising in a corporate environment. Resp. 8. But this fear is utterly unfounded. The business judgment rule obviously has its limits, particularly in the context of a misapplication charge.

The misapplication of fiduciary property statute criminalizes dealing with property contrary to an agreement or a law. TEX. PENAL CODE § 32.45. So, for example, if a corporation's by-laws prohibit spending company funds on future investors, but the CEO consistently wines and dines prospective financiers on the corporation's dime, he has dealt with property he holds as a fiduciary contrary to an agreement—and therefore has committed misapplication of fiduciary property. In that illustration, the business judgment rule would not save the CEO—even if every potential backer ultimately invested in the company to the company's benefit—because his actions were in direct violation of an agreement, as prohibited by the statute. The limit on his authority pursuant to an agreement was clear; thus, there was no business judgment involved.

But when the basis for a misapplication conviction is boilerplate language in an agreement requiring the fiduciary to exercise care in managing the company's

9

affairs—as Fuelberg's employment contract in this case did—a level of judgment is inherently called for. When a CEO faces a complex business decision of that nature—one that is not specifically addressed in any agreement or law—he should receive the protection of the business judgment rule before being sent to jail.

## PRAYER FOR RELIEF

For the foregoing reasons, the petition should be granted.

DATED: February 20, 2015

Respectfully submitted,

/s/ *James C. Ho*
James C. Ho
    State Bar No. 24052766
Prerak Shah
    State Bar No. 24075053
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, TX 75201-6912
Tel.: (214) 698-3264
Fax: (214) 571-2917
*jho@gibsondunn.com*
*pshah@gibsondunn.com*

COUNSEL FOR PETITIONER

10

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2)(E), this brief contains 2,387 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ *James C. Ho*
James C. Ho

## PROOF OF SERVICE

I certify that on February 20, 2015, a true and correct copy of this motion was served on the following counsel of record via electronic mail:

Dustin Howell
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
*dustin.howell@texasattorneygeneral.gov*

Lisa C. McMinn
STATE PROSECUTING ATTORNEY
P.O. Box 13406
Austin, Texas 78711-3046
*lisa.mcminn@spa.texas.gov*

/s/ *James C. Ho*
James C. Ho